[No. 11634.    Department One. — October 24, 1887.]

IN THE MATTER OF THE ESTATE OF JOEL NOAH, DECEASED.

HUSBAND AND WIFE — AGREEMENT FOR SEPARATION — DEATH OF HUS-
BAND — FAMILY ALLOWANCE. — A wife who has voluntarily entered into
a valid agreement with her husband for their separation, whereby, in
consideration of certain money paid, she waived all her marital claims,
and in pursuance of the agreement has voluntarily continued to live
apart from him without any attempt to set aside the agreement, or to
assume again their marital relations, or to demand from him any further
means for her separate support, ceases to be a member of the immediate
family of the husband, and upon his death is not entitled to a family
allowance out of his estate, under sections 1465 and 1466 of the Code of
Civil Procedure.

APPEAL from an order of the Superior Court of the city and county of San Francisco refusing a family allowance.

The facts are stated in the opinion of the court.

*Henry E. Highton*, for Appellant.

*Pillsbury & Blanding, Horace G. Platt, William Loewy, E. N. Deuprey*, and *Gordon Blanding*, for Respondents.

McKINSTRY, J. — The appellant, Harriet T. Noah, as widow of the deceased, petitioned the Superior Court for an allowance of one hundred dollars a month for her maintenance, under sections 1466 and 1467 of the Code

of Civil Procedure.   There was no child the issue of the marriage of petitioner and decedent.

The executors answered the petition, and at the trial testimony was given to prove that decedent and petitioner were married October 14, 1875, and after living together five or six weeks, separated, and thenceforth lived separate and apart until his death, which occurred on the 28th of August, 1883; that within six weeks prior to the marriage, decedent gave to the petitioner $2,825 for her personal use, and supplied her liberally during the time they lived together; that the separation was by mutual consent of the parties; that upon the separation, the petitioner for the allowance received from the decedent $10,500, $500 of which was paid by her to an attorney at law, who negotiated the settlement for her; that at the time of the marriage, decedent owned certain improved real estate at the corner of Spring and California Streets, San Francisco, the income from which was then about $500 a month, and had in cash about $35,000; that after the separation the decedent contributed nothing to her support, and she did not look or apply to him for her support or maintenance. They were as utter strangers, and never spoke or corresponded; that she had expended the money paid her on the separation prior to a point of time about four years before the filing of her petition for the allowance, and during such four years she supported herself from her own earnings, with the assistance of her mother and brother.   The value of the property in the hands of the executors when the petition for allowance was heard was $26,400; there was no community property of the marriage.   The petitioner, although informed of the death of decedent, did not attend his funeral.

The executors introduced a writtten agreement for separation, whereby, in consideration of the consent of the decedent that the said Harriet T. should live separate and apart from him, and of the receipt of $10,500 by

her, she agreed not to demand any alimony or support from him; that she would not contract any debts on his account; that the $10,500 should be in full satisfaction of "all her marital claims," etc.

By our law, a husband and wife may agree in writing to an immediate separation, and may make provision for the support of either of them during such separation. (Civ. Code, sec. 159.)   Of course the transaction is subject to the rules which control the contracts of those occupying confidential relations.   (Civ. Code, sec. 158.)

It is said by appellant that, upon her application for an allowance, the burden was on the executors of alleging and proving the "fairness" of the contract.   The answer of the executors was not demurred to by the petitioner.   The answer set forth facts which, if proved, justified the court in finding the agreement to have been fair, and the evidence, admitted without objection, tended to establish its fairness.   The precise objection, that the agreement was not admissible under the averments of the answer, was not made by appellant when the agreement was offered in evidence.   The objection was, that it was "incompetent, immaterial, and irrelevant, *on the ground* that it was not sufficient in law to vary, alter, or affect the legal rights of the petitioner on her application as the widow of the deceased."

Moreover, the agreement, as far as it was an agreement to separate, and for her support during the separation, was fully executed during the lifetime of the deceased.   The husband paid the money, and never sought to compel subsequent cohabitation.   The wife received the money, applied it to her support, and ever after voluntarily lived separate and apart from her husband.   The order of the Superior Court was not based upon the agreement alone, but on the further facts that, in accordance with its terms, she ceased to live with him, and from thence forward was not a member of his family.

In this court, the appellant urges that the agreement
is void because not acknowledged by her in the manner
prescribed for the acknowledgment of conveyances of
the separate property of the wife. The objection was
not taken in the court below; and when the contract
was entered into, the wife had no vested interest — cer-
tainly no " separate " interest — in the separate property
of the husband.

But it is said the agreement did not affect the rights
of the appellant as a widow, — rights which did not ac-
crue until after the death of Joel Noah. It is not neces-
sary here to decide that appellant, by entering into the
agreement, waived or released any of her rights as *heir*
of Joel Noah, deceased. We do not think she was abso-
lutely entitled, as of right, to an allowance during the
administration of his estate.

It was held in Massachusetts that while an antenup-
tial agreement between the widow and deceased, whereby
she covenanted to accept a certain settlement in lieu of
dower, and in place of any and every claim against his
estate, would, if performed, be effectual as a release of
dower, it was no answer to her claim for a distributive
share of personal estate left by her husband (*Sellings*
v. *Richmond*, 5 Allen, 187); and that such an agree-
ment was of itself no defense to a petition for an allow-
ance for necessaries. (*Blackinton* v. *Blackinton,* 110 Mass.
461; see also *Wentworth* v. *Wentworth*, 69 Me. 254.) The
decisions seem to be based on the limited and inferior
jurisdiction of the Probate Courts in Massachusetts,
which had no power to construe or enforce marriage
contracts. (*Sellings* v. *Richmond, supra.*) The contracts
in the cases referred to — which preceded the marriage
and contemplated its continuation until the death of one
of the parties — in no way operated to disturb the har-
mony of their personal relations, and they continued to
live as husband and wife until the decease of the hus-
band. In none of the cases was there any question that

the surviving wife, or wife and children, constituted the family of the deceased at the time of his death.

It was held in New York that an antenuptial contract, such as above mentioned, precluded the widow from demanding certain articles of personal property directed by statute to be set apart to her. (*Matter of Estate of Young* v. *Hicks*, 92 N. Y. 235.)

Section 1465 of the California Code of Civil Procedure provides that upon the return of the inventory of an estate, the court wherein the administration is pending may set aside for the use of the surviving wife, or wife and children, the property exempt from execution. And section 1466 provides that if the amount set apart be insufficient for the support of the widow, or widow and children, the court, or the judge thereof, " must make such reasonable allowance out of the estate as may be necessary for the maintenance of the family, according to their circumstances, during the progress of the settlement of the estate."

By statute of Maine it was enacted, " when an estate is insolvent, or no provision is made for the widow in the will of the husband, the widow *shall be entitled* to so much of the personal estate . . . . as the judge deems necessary, according to the degree and estate of her husband, and the estate of her family under her care." (*Gilman* v. *Gilman*, 53 Me. 191; S. C., 83 Am. Dec. 502.) In *Kersey* v. *Bailey*, 52 Me. 201, the court said the original intention of the statutes of Maine, giving the power to the Probate Court to set aside property to her, was to furnish a temporary supply for the wants of the widow and family while the estate was in process of settlement. And the learned court also said: " From the tenor of the statute [in this respect like the provision of our code authorizing an allowance] directing the attention of the judge to the estate and condition of the husband and the state of the family under the widow's charge, it is apparent that the legislature, in making the provision,

was contemplating the ordinary case where the parties to the marriage relation have lived together till death severed the tie." In that case the widow, though the legal wife of the deceased, had not lived or cohabited with him as such for more than forty years. He had *deserted* her, but she, supposing him to be dead, married another man, with whom she lived as his wife until the death of her real husband. She lost nothing by his death which she had before possessed, and there seemed to have been a tacit relinquishment by each of all claims upon the other for a long period of time. The court concluded she was not entitled to have any part of the estate set aside to her under the statute. The same court had previously held the widow's claim for an allowance was not an absolute right; that the order was in the discretion of the probate judge. (*Murray* v. *Cargill*, 32 Me. 516.)

Section 122 of the former Probate Act of this state reads: "The Probate Court or judge shall make such reasonable allowance out of the estate as shall be necessary for the maintenance of the family according to the circumstances," etc. In *Estate of H. H. Byrne*, the learned judge of the Probate Court of San Francisco (afterward one of the justices of this court) said that the right to an allowance, under the section of the statute quoted, was founded on the statute alone. "It is quite different from the right of the heir to inherit, or of the widow to her dower, or the right to one half of the community property. It is an allowance made to *the family*. . . . . I think that the statute was intended to embrace those who were the immediate family of the deceased; those who were by law entitled, up to his death, to look to him for support and protection. . . . . Yet any person, to be entitled to any allowance out of the estate, must have been in the receipt or in law entitled to demand of deceased a maintenance before his death." (Myrick's Prob. Rep. 1.)

We concur in this view of the law. We also think that in enacting 1466 of the Code of Civil Procedure, the legislature had in contemplation the ordinary case where "the parties to the marriage relation live together until death severs the tie." The letter of the statute may cover other cases. We are not to be understood as saying that in every instance where the husband and wife have separated, the widow should be denied an allowance. She may have been driven from her home by the cruelty of her husband; and in such case, the Superior Court may, perhaps, make an allowance, although the widow made no effort during the lifetime of deceased to reassume matrimonial relations with him. It is enough to say that—since the appellant voluntarily made an agreement with her husband for separation, such as our law authorizes, received and enjoyed the benefits of the money paid for her support during the separation, and voluntarily continued to live apart from him without any attempt to set aside the agreement, or to assume again the matrimonial connection, or even to demand further means for her separate support—the court below was justified in holding that the petitioner did not constitute the immediate family of the deceased, to whom was to be continued, during the settlement of the estate, the "reasonable support" which the husband, in ordinary cases, is presumed to furnish his wife.

Order affirmed.

TEMPLE, J., and PATERSON, J., concurred.