BRADFORD R. WOOD, JR., EXECUTOR, *vs.* SAMUEL WOOD AND OTHERS.

New Haven & Fairfield Cos., June T., 1893. ANDREWS, C. J., CARPENTER, TORRANCE, FENN AND BALDWIN, JS.

The word "family," in both its common and its legal meaning, signifies that collective body of persons who live in one house and under one domestic government.

It does not include adult children living separate from and not forming a part of the same household.

A testator made the following provision in his will:—"In relation to my property at *W*, a house and several acres of land now occupied by my son *S* and family, I reserve the same for the joint or several use of my wife and daughter, as can be agreed upon with said son; the premises to be kept in repair and the taxes paid by my said son, and when to be no longer occupied by any member of my family to be sold and the avails divided among my heirs." Held that by the term " my family " was intended the testator's own family, of which his son *S* was not a part, and that *S* took no right to the use of the property after the death of the wife and daughter of the testator.

This construction was aided by a manifest intent of the testator to treat his five children equally, while the giving to *S* the life use of the place would have given him more than his share.

When a word is used once in a will with a certain meaning, it will, unless a different intention is shown by the will, be held to have the same meaning when used in other parts of the will.

[Argued June 13th—decided September 9th, 1893.]

SUIT to obtain a judicial construction of a will; brought to the Superior Court in Fairfield County, and reserved, on a finding of facts, for the advice of this court. The case is stated in the opinion.

*C. Thompson*, for the plaintiff.

*M. W. Seymour* and *H. H. Knapp*, for the defendants.

ANDREWS, C. J. Bradford R. Wood, a long time resident of Albany, N. Y., died there on the 26th day of September, 1889, possessed of considerable real estate in that place and also of a house and certain real estate in Westport, Connecticut. He left a will, duly executed to pass real estate, made on the 11th day of April, 1879, with a codicil thereto made on the 15th day of the same month, and a second codicil dated July 29th, 1885. In the original will, after sundry bequests, he gave all the rest and residue of his estate to his five children,—Samuel, Thomas G., Elizabeth H., Bradford R., Jr., and J. Hamden—share and share alike. No reference was made in the will to his real estate in Connecticut. The second codicil, which is the subject of the present inquiry, is as follows:

" In relation to my property at Westport, Fairfield County, Connecticut, a house and several acres of land and now occupied by my son Samuel and family, I reserve the same for the joint or several use of my wife and daughter (therewith) as can be agreed upon with said son, in summer or in any other season of the year, as they so choose, elect or agree. The said premises to be kept in good repair by my said son, and the taxes duly paid, and when to be no longer occupied by any member of my family, or desired, then to be sold at the best terms, and the avails to be legally divided among my heirs, if any living, and if none, to be appropriated to the best purpose my executor can devise or I might approve if living."

Prior to the date of this codicil one of the five children, J. Hamden Wood, had died leaving no issue. At the date of this codicil the other four children were living and the testator's wife, Eliza. The son Samuel was married and had children and lived in the testator's house at Westport, where he continued to reside until the testator's death, paying no rent therefor. His wife, Eliza, died before the testator, on the 25th day of March, 1887. The daughter, Elizabeth, died shortly after her father, on the 5th day of August, 1890. She was unmarried and had always lived with her father as a part of his family until his death. Bradford R. Wood, Jr., was never married, and during the last few years of his father's life had lived with him as a member of his family. Whether the son Thomas G. was married or otherwise is not stated.

In the interpretation of a will the essential object is to arrive at the intention of the testator. And there is no way by which that intention can be ascertained but the language of the instrument itself. As no part of the original will is set out save the residuary clause, we are compelled to ascertain that intention as best we may from the codicil alone.

All the parties in the case assume that by the codicil in question the testator intended to create an estate in the Westport property in some persons. On the part of the executor it is contended that the estate so intended was to

Wood v. Wood.

vest in the testator's wife and daughter only ; on the part of Samuel Wood it is contended that such estate was to vest in the wife and daughter and himself. The testator directed in respect to this Westport place, " that when to be no longer occupied by any member of ' my family ' or desired, then to be sold," etc. If the contention of the executor is correct then the property should now be sold. But if the contention of Samuel is correct the property cannot now be disposed of. The contention turns upon the construction to be put upon the term " my family " as used in the clause just above quoted. If by that term the testator intended to exclude his son Samuel then the claim of the executor is sustained. But if he intended to include Samuel in that term then the claim of Samuel is sustained.

In construing a will or any other writing words are to be given their primary and common meaning unless there is something in the context to show that they are used in some other meaning. The word " family " in its common and primary meaning is " that collective body of persons who form one household, under one head and one domestic government, including children and servants." Century Dictionary. " That collective body of persons who live in one house and under one head or manager ; a household, including parents and children and servants." Webster's Dictionary. This is also the meaning given to this word by the law decisions in this state and in the state of New York and in other states. *Burlington* v. *Cheshire*, 31 Conn., 326 ; *Hart* v. *Goldsmith*, 51 Conn., 479 ; *Spencer* v. *Spencer*, 11 Paige, 159 ; *Kain* v. *Fisher*, 6 N. Y., 597 ; *Bowne* v. *Witt*, 19 Wend., 475 ; *Poor* v. *Hudson Ins. Co.*, 2 Fed. Rep., 432 ; *Bradlee* v. *Andrews*, 137 Mass., 50 ; *Bates* v. *Dewson*, 128 Mass., 334. And it does not include adult children living separate and not forming a part of the same household. *Smith* v. *Wildman*, 37 Conn., 384 ; *Phelps* v. *Phelps*, 143 Mass., 570 ; *Andrews* v. *Andrews*, 7 Heisk., 234.

The testator in the earlier clause of this codicil, in referring to the family of his son Samuel, uses the word strictly according to its common and legal meaning. Such use dem-

onstrates that the testator knew the meaning of that word. There is another rule applied in the construction of wills— that when a word is used once in a will with a certain meaning it will be held to have the same meaning when used in other parts of the will. If the word " family," when referring to the son's family, means only that collection of persons who lived in his house at Westport, then the same word when referring to the testator's family must be understood to mean only that collection of persons who lived in the testator's house in Albany. The testator uses the word " family " in these clauses as though he had in mind more than one family and intended a distinction between them. In the first clause the expression is " my son Samuel and family ; " in the latter clause the expression is " my family." On the one hand the son's family, on the other his own family ; " my family " placed over against " son Samuel and family." This contrast makes it very highly probable, if not certain, that the testator did not intend to include his son Samuel in the expression " my family " as used in his codicil. This view is strengthened by other considerations drawn from the will. The original will divided the bulk of his property among all his children share and share alike, thus showing that the testator did not intend to prefer one child to another but to preserve equality among them in the distribution of his estate. A. life use by Samuel of the Westport property would to that extent render the shares unequal and so far be inconsistent with the general scheme indicated by the testator.

It is suggested by counsel for Samuel that the testator had never required him to pay rent for the use of the Westport place, and this is urged as a reason why it is probable that the testator intended to have Samuel remain on that place simply by paying the taxes and keeping it in repair. Taking all the facts together the contrary seems much the more probable conclusion. It appears that Mr. Wood was supporting some or all his other children without charge at his house in Albany. The idea of equality among his children would lead him to so frame his will that when the support

of his other children at the house in Albany ceased, the free use of the house in Westport by Samuel would also cease.

It is suggested further that the testator made no change in his will after the death of his wife. But this is as much an argument against Samuel as it is in his favor. If the testator by the expression " my family " did not intend to include Samuel, then there was no occasion to change the codicil.

Upon the whole case we think that since the death of his sister Elizabeth H. Wood, Samuel Wood has had no estate in the Westport property by reason of said codicil; and we so advise the Superior Court.

In this opinion the other judges concurred.