[S. F. No. 8178. Department One.—October 11, 1917.]

In the Matter of the Estate of WALTER S. McSWAIN, Deceased. SUSIE McSWAIN, Appellant, v. HARRY J. CRAYCROFT et al., Respondents.

ESTATES OF DECEASED PERSONS — FAMILY ALLOWANCE — COMMON-LAW RULE—POWER OF COURT STATUTORY.—At common law the court had no power to direct the payment of money out of the estate of a deceased person for the support and education of his family to the exclusion of his creditors or heirs; such power to do so as the court now has comes entirely from statute.

ID.—FAMILY ALLOWANCE—ADDITIONAL ALLOWANCE FOR CHILD, WHEN NOT PERMISSIBLE.—When the court has ordered an allowance to the widow presumably sufficient for the support of the family, an additional allowance for the support of a minor daughter who, without cause, leaves the family home and goes to live with others is not permissible.

ID.—WIDOW'S RIGHT TO EXPEND FAMILY ALLOWANCE.—In the absence of evidence to the contrary, the presumption would be that the widow is the proper person to receive a family allowance and have the care, custody, and education of her minor child.

ID.—APPLICATION FOR ADDITIONAL FAMILY ALLOWANCE—EVIDENCE.—On an application for an additional family allowance by a guardian for the support of a minor child of a deceased person, where an order had been already made for a family allowance to the widow, it was error to refuse to allow the widow, who was the mother of the child, to testify that she was able and willing

to support her child as she, in her discretion, believed was proper and necessary.

ID.—DISCRETION OF MOTHER AS TO EDUCATION OF CHILD.—It is not the province of the probate court to substitute its judgment for that of the parent of a child and determine that the parent who is a fit person to control its custody and education is not educating it so as to fit it for the calling to which the court believes it has a natural talent.

ID.—EXPENDITURE OF FAMILY ALLOWANCE—POWER OF COURT TO CONTROL.—If a sufficient family allowance has been ordered and it is proved that the widow is unfit to care for her minor child or neglecting her duty in that regard, the court should not make an additional allowance, but should direct that a part of the allowance already made be applied to the benefit of the child.

APPEAL from an order of the Superior Court of Fresno County. Geo. E. Church, Judge.

The facts are stated in the opinion of the court.

Frank Kauke, for Appellant.

Everts & Ewing, and M. G. Gallagher, for Respondents.

SHAW, J.—This is an appeal by Susie McSwain, as the administratrix of the estate of Walter S. McSwain, and also as the widow and heir at law of said deceased, from an order made by the superior court in the course of administration of said estate, directing the payment by said administratrix out of the funds of said estate of the sum of $125 each month for the maintenance, education, and support of Annie I. McSwain, during her minority or until the said administration was closed.

Walter S. McSwain died intestate on December 6, 1915, leaving surviving as his only heirs at law his widow, Susie McSwain, and his daughter, Annie I. McSwain, then above the age of sixteen years. Prior to his death he and his wife and daughter were living together as a family in his home in Fresno. On January 5, 1916, Susie McSwain duly qualified and has ever since been acting as the administratrix of said estate. The property of the estate has been appraised at the value of over thirty-nine thousand dollars. On February 28, 1916, the court duly made an order setting apart to Susie McSwain, as surviving wife of said deceased, the personal

property exempt from execution, and directing a family allowance to her in the sum of two hundred dollars per month out of said estate, for the support and maintenance of the family of said deceased during the administration of said estate.

On November 23, 1916, the court made an order appointing Harry J. Craycroft guardian of the person and estate of Annie I. McSwain. On December 5, 1916, Susie McSwain duly appealed from said order. On December 1, 1916, Craycroft, as such guardian, filed the petition upon which the order herein appealed from was made, asking an allowance out of the estate of the decedent to be paid to him for the maintenance, support, and education of said minor in the sum of $125 a month during the pendency of the administration.

The only grounds upon which Craycroft based his petition for an allowance were that soon after the death of the decedent said child began to reside with her aunt, Mrs. Thorne, and had not received any money from said estate, but had been maintained and supported by said aunt; that the child was contemplating a course in a conservatory of music and that the petitioner intended to have her enter the same; that it would be necessary to have the sum of money asked, to defray the expenses thereof, and maintain and support her, and that the administratrix had contributed nothing out of said estate to the maintenance and support of said child, and refused to do so.

Susie McSwain, in her triple capacity as administratrix of said estate, as surviving wife, and as heir of said deceased, filed an answer opposing the petition for an allowance to Annie I. McSwain. She alleged that she was the mother of said Annie I. McSwain and had ever since the death of said decedent maintained a good and sufficient home for her, and. was during all of said time, and ever since has been, ready, able, and willing to care for, maintain, and support said child, in a fit and proper manner, in accordance with her station in life, and to provide for and educate her, and had repeatedly sought and requested that she be permitted to do so.

A few weeks after the death of her father the child, without good cause, so far as appears, went to live with her aunt, and has ever since resided there. There is no pretense that the mother is not a wholly fit and proper person to have the

care, custody, and education of her child.    There was evidence to the effect that the sum of money allowed would be necessary for the expenses of her proposed musical education and for her support, and that the administratrix had paid nothing to the child or to Mrs. Thorne toward such support or education.    Upon the trial the widow testified that she had the home in which she, her husband, and child had been living prior to his death, and had been maintaining it ever since that time.    She then offered to prove that she was able and willing to provide for her daughter and educate her, and that she was still keeping up the home.    The respondent objected to this proof, on the ground that it was immaterial and irrelevant.    The court sustained the objection and refused to allow. any evidence to that effect.    Thereupon it made the order appealed from.

At common law the court had no power to direct the payment of money out of the estate of a deceased person for the support and education of his family, to the exclusion of his creditors or heirs at law.    Such power to do so as the court now has comes entirely from the statute.    (*Estate of Noah,* 73 Cal. 588, [2 Am. St. Rep. 829, 15 Pac. 287]; *Estate of Heywood,* 149 Cal. 130, [84 Pac. 834].)    On this subject Mr. Woerner says: "The common law secures to the widow her dower, and to the widow and children their *pars rationabilis* (corresponding to dower and distribution under American Statutes), but no provision whatever is found therein to meet the exigencies arising immediately upon the death of the head of the family, save, perhaps, the clause in *Magna Carta* securing to the widow the right to remain in her husband's capital mansion for forty days after his death, within which time her dower was to be assigned."    Our statute provides that the court may "set apart for the use of the surviving husband or wife, or, in case of his or her death, to the minor children of the decedent, all the property exempt from execution, including the homestead selected, designated and recorded"; and that if no proper homestead has been selected, then the court must set apart "a homestead for the use of the surviving husband or wife and the minor children; or if there be no surviving husband or wife, then for the use of the minor children" (Code Civ. Proc., sec. 1465); and further, that "If the property set apart is insufficient for the support of the widow and children, or either, the court or a judge thereof

must take such reasonable allowance out of the estate as shall be necessary for the maintenance of the family, according to their circumstances, during the progress of the settlement of the estate.'' (Code Civ. Proc., sec. 1466.)

These statutes were enacted in order to make a provision for the family of the deceased prior to the time when the estate could be finally distributed to them. No one who is not a member of such family at the time of the death of the decedent is entitled to any allowance from the estate for support or maintenance. It is well settled that a surviving widow who had separated from her husband and had ceased to be a member of his family, or to be entitled to his support at the time of his death, is not entitled to an allowance as a member of the family under these provisions. (*In re Noah,* 73 Cal. 588, [2 Am. St. Rep. 829, 15 Pac. 287]; *Wickersham* v. *Comerford,* 96 Cal. 438, [31 Pac. 358]; *Estate of Yoell,* 164 Cal. 540, [129 Pac. 999].) So, also, the authorities declare that adult children who had left the family home and were providing for themselves at the death of the decedent are entitled to no support out of the estate, pending administration. (*Wood* v. *Wood,* 63 Conn. 327, [28 Atl. 520]; *Weber* v. *Short,* 55 Ala. 311; *Hoffman* v. *Neuhaus,* 30 Tex. 633, [98 Am. Dec. 492].) And a child who was a minor at the death of the decedent cannot have a probate homestead set apart out of his estate if the application is made after she arrives of age. (*Estate of Heywood,* 149 Cal. 130, [84 Pac. 834].) The reason of the decision in the Heywood case was that the statute makes provision only for minor children, and has no application to those who have become of age, and that the daughter in that case waived her right to the homestead by failing to apply therefor during her minority. Sections 1465 and 1466 relate to the same subject. The latter obviously refers to the conditions described in the former. They should be construed together, and, so construed, it is obvious that the family referred to in the latter section consists of the same persons as those expressly mentioned in the former section, that is, the surviving husband and wife, if any, and the minor children, if any, of the decedent.

Prior to the application of Craycroft, the court had made an allowance of two hundred dollars a month to the widow for the support and maintenance of the family. This would include the daughter, in whose behalf the present application

is made. Unless there were circumstances which required an additional allowance to be made expressly for the child, as, for example, if the widow was not properly applying the same for the benefit of the child, the court should not make a separate allowance, but should require the child to be supported out of the allowance already made. Under all ordinary circumstances, the mother, as the head of the family, would be the proper person to receive the allowance and to supervise its expenditure. It was said in *Estate of Moore*, 72 Cal. 342, [13 Pac. 883] : "It must be, however, in the power of the court to direct the expenditure of the allowance in such manner as will insure the maintenance of the family, and it may happen in some cases that the mother would not be a suitable person to be intrusted with it." In that case a family allowance of $250 a month had been made for the support of the widow and five minor children of the decedent. Afterward the widow and one child left the home of the decedent, in which the family had been living, and there was a dispute over the question whether she had done so voluntarily, or had been forcibly excluded therefrom by other persons interfering in behalf of the other children. Believing that she had done so voluntarily, the administrator thereafter refused to pay her more than $50 per month of the allowance, and had expended money of the estate in the maintenance of the other children who had remained in the homestead. The widow offered to prove that she had been expelled forcibly, and that she was ready and willing to care for, educate, and support all the children. The court below refused to permit this testimony and allowed the administrator for the expenses incurred by him in supporting the other children separate and apart from the mother. The court said: "The administrator does not, however, by virtue of his office, become charged with the care of the family, and had no right, arbitrarily, to remove the children from the mother. Nor were the disbursements here in question proper charges against the estate." It was held that the evidence excluded was material and proper and should have been admitted, but that if, upon investigation, the conduct of the administrator was justifiable, and his expenditures for the other members of the family necessary, a reasonable allowance could be made for the support of that portion of the family.

This decision seems to be applicable to the case in hand. An allowance of two hundred dollars a month, presumably sufficient, was made to the widow for the support of the family. If the minor daughter left the family home and went to live with others, without cause, the persons with whom she lived, or her guardian, if someone other than her mother were appointed guardian, would have to look to the mother for the support of the child, and would not be entitled to an allowance by the court out of the estate, for that purpose,— at all events not unless the mother was at fault in the matter. In the absence of evidence to the contrary, the presumption would be that the widow was the proper person to receive the family allowance, and that, as the parent, she would be entitled to have the care, custody, and education of her child. She is by law charged with that duty. There was nothing to indicate, in fact no assertion, that she was not in all respects competent, fit, and worthy. It would not be necessary for her to prove the fact, for it would be presumed in the absence of evidence. It was clearly wrong for the court to refuse to allow her to testify that she was able and willing to support her child as she, in her discretion, believed was proper and necessary. It is not within the province of the probate court to determine that the parent of a child, who is a fit person to control its custody and education, is not educating such child so as to fit it for a calling for which the court may believe it has a natural talent. The probate court, in the administration of an estate, is not empowered to substitute its judgment for that of the parent on such matters. Upon like grounds it must be considered that the court had no power to direct the payment of an additional allowance to the aunt of the child, without proof that the mother was unfit to care for her child, or that she was neglecting her duty in that regard. And if all this was shown, and the allowance already made was sufficient, in view of the condition of the estate, the needs of the parties, and their station in life, the court should not have made an additional allowance, but should have directed that a part of the allowance already made should be applied to the benefit of the daughter.

The order is reversed.

Sloss, J., and Lawlor, J., concurred.