[Civ. No. 5627. Third Appellate District.—July 6, 1936.]

In the Matter of the Estate of WILLIAM FOREST FULTON, Deceased. LOUISA J. FULTON, Petitioner and Appellant; S. G. FULTON, Executor and Respondent.

R. V. Wilcox and Dennett & Zion for Appellant.

W. Coburn Cook for Respondent.

PULLEN, P. J.—This is a controversy involving the right of appellant as the widow of William Forest Fulton, deceased, to have set aside to her a probate homestead and certain exempt property.

A stipulation as to the facts reveals that William Forest Fulton and Louisa J. Fulton were married and lived together for several years in the county of Stanislaus. In 1928 they separated and in 1931 William Forest Fulton brought an action for divorce on the ground of desertion. Louisa J. Fulton appeared and filed a cross-complaint asking for an adjustment of certain property rights. After a trial upon the issues thus presented, an interlocutory decree of divorce was entered in June, 1932. From this interlocutory decree Louisa J. Fulton appealed to the Supreme Court. The cause was argued and submitted but before determination William Forest Fulton died in December, 1933. He left a will which was admitted to probate, disposing of his property and nominating S. G. Fulton executor.

In May, 1934, the Supreme Court rendered its decision (220 Cal. 726 [32 Pac. (2d) 634]) affirming the judgment of the trial court, and in due time, upon motion of the executor, a year having elapsed since the entry of the interlocutory decree, the final decree was entered.

Prior to the decision by the Supreme Court the widow petitioned the probate court for a homestead and the setting aside to her of the exempt personal property. An opposition thereto was filed by the executor, and after a hearing the petition was denied and this appeal is taken therefrom.

Prior to the petition for an assignment of the exempt personal property and a probate homestead, the widow had applied for and been granted a family allowance. Upon an appeal from that order this court (8 Cal. App. (2d) 423, 48 Pac. (2d) 120) affirmed that order, and appellant now relies upon that case as decisive of the issues here presented.

An examination of the record and opinion in that case disclosed, however, that that case is not applicable here nor decisive of the issues now before us. That case was presented upon a bill of exceptions, which did not show that Louisa J. Fulton had deserted her husband nor did it show the entry of any final decree nor any appeal pending from the interlocutory decree. It did show that an interlocutory decree

had been entered, but in the absence of any record this court could not take judicial notice of any appeal therefrom, and therefore the wife, pending administration of the estate of her husband, was entitled, under section 1464 of the Code of Civil Procedure, to support pending the administration regardless of cohabitation, the court being bound, in the absence of evidence to the contrary, to presume in favor of the family relationship.

█ Upon the conclusion of the hearing of the application for probate homestead and the setting aside of exempt personal property, Honorable B. C. Hawkins, a Judge *pro tempore* of the Superior Court of Stanislaus County, filed a written opinion which well expresses our views in regard to the issues presented, and we adopt the same in part as follows:

"It is well settled law that an interlocutory decree of divorce does not dissolve the marital status, and therefore, upon the death of William Forest Fulton, Louisa J. Fulton became his widow.

"It is equally well settled that, in a proceeding like the instant one, the widow would be entitled to have the exempt property, including the homestead, set apart to her, unless she has by her conduct lost or by her agreement waived such rights.

"Disregarding any effect the interlocutory decree of divorce may or may not have had upon these rights, this court is of the opinion that the widow, Louisa J. Fulton, has lost these special statutory rights of a widow, by her conduct in voluntarily abandoning her husband under conditions rendering him no longer liable for her support.

"An interlocutory decree of divorce was granted to deceased against said Louisa J. Fulton on the ground of desertion. This case was appealed and affirmed. (*Fulton* v. *Fulton*, 220 Cal. (2d) 726 [32 Pac. (2d) 634].) The judgment has become final and this court is bound thereby.

"In so far as this proceeding is concerned, the fundamental doctrines of law referred to in this opinion apply alike to proceedings for family allowance, to set aside exempt property, including the homestead and to assign small estates to the widow for the support of the family. That this is true appears from the text of cases cited by both sides to this controversy, some of which hereafter will be referred to herein.

"It will be noted that all of these special statutory rights of the widow are treated under the chapter heading: 'Provisions for the Support of the Family', in the Code of Civil Procedure and in the Probate Code the subject of exempt property, homestead and family allowance are treated under the heading 'Support of the Family', Chapter XI, section 660 et seq. Mr. Church, in his work on Probate Law has this to say speaking of probate homesteads:

" 'The obvious purpose of the statute is to provide the family of the deceased with a home, where they may live and be protected against creditors and heir. The object being of a humane character, the statute should be held to apply fairly to all cases within the equity and spirit of the act, but not beyond this. (11A Cal. Jur. 605.)'

"This court is of the opinion that the principles of law that are determinative in this proceeding are laid down in *Estate of Miller*, 158 Cal. 420 [111 Pac. 255] (1910), and have never been reversed or materially modified by any of the later decisions of our appellate courts.

"In that case the widow of decedent applied to the court for an order and decree vesting the whole estate (value less than $1,500) in her under the provisions of section 1469 of the Code of Civil Procedure. Her application was contested by a legatee under the will, the appellant, upon the ground that the widow had abandoned decedent and had thereby lost her right to this special privilege (which, by the way, has nothing to do with the right of inheritance).

"Appellant sought to introduce evidence on the question of the widow's abandonment of decedent and its effect upon the status of the widow as a member of the deceased's family. This proffered evidence was rejected and such rejection was the basis of the appeal.

"We quote the following passages from that decision:

" 'Section 1469 is found in chapter 5 of article I of the Code of Civil Procedure under the specific title of "Provision for the support of the family". The word "family" as thus used has received at the hands of this court exact definition. . . . In *Estate of Noah*, 73 Cal. 580 [15 Pac. (2d) 287, 2 Am. St. Rep. 829], this court quotes with approval the following: "I think the statute was intended to embrace those who were the immediate family of the deceased; those who were by law entitled up to his death to look to him for support

and protection. . . . Yet any person to be entitled to an allowance out of the estate, must have been in receipt of, or in law entitled to demand of deceased, maintenance before his death. (*Byrnes Estate,* Myr. Prob. 1.) . . . ''

" 'While the precise question whether a widow, who was not at the time of her husband's death a member or part of his family, is entitled to distribution under section 1469 of the Code of Civil Procedure has never arisen in this state, nevertheless, under similar statutes pertaining to the homestead, and in other states under like statutes making provision for the maintenance or support of the family, the rule of decision has been uniform, that the widow, to take, must come within the definition of ''family'', must have been a member thereof, or at least must, without fault of her own, have been entitled to maintenance and support from the husband during his lifetime.'

"(The court here discusses *Wickersham* v. *Comerford,* 96 Cal. 433 [31 Pac. 358], and *Estate of Noah,* 73 Cal. 583 [15 Pac. 287, 2 Am. St. Rep. 829], relating to homestead and family allowance respectively, in which cases the marital relation was severed by agreement, and in that connection, quoting from *Wickersham* v. *Comerford, supra,* the court said:)

" 'And since I think the setting apart of a homestead by the court from the separate property of the husband, as required by section 1465, "for the use of the surviving . . . wife and minor children", means the setting of it apart for the temporary use of the family in the sense in which the word ''family'' is used in sections 1466 and 1468, it follows that the surviving wife is not entitled to such homestead unless she had been a member of her husband's family immediately before and at the time of his death.'

"Continuing, Justice Henshaw says: ' . . . In other jurisdictions the rule of decision is so uniform that it is embodied in the following declaration in 18 Cyc. 393: ''The special allowance to a widow is usually denied where she was not living in a family relation with her husband at the time of his death unless her separation was involuntary and through no fault of hers or was based upon reasons constituting a sufficient ground for divorce.''

" 'Section 175 of the Civil Code declares that ''a husband abandoned by his wife is not liable for her support until she

offers to return, unless she was justified, by his misconduct, in abandoning him; nor is he liable for her support when she is living separate from him, by agreement, unless such support is stipulated in the agreement''.

'' 'It follows, therefore, that the evidence sought to be introduced by appellant, tending to determine the status of the widow as a member of the deceased's family, was improperly rejected, and for this reason the decree appealed from is reversed.'

''So far as I have been able to determine this is the only California case which has reached the appellate courts in which application has been made by a surviving spouse for any of the special privileges of support (including family allowance, exempt property, homestead or the assigning of small estates without administration), in which the applicant had deserted or abandoned the other spouse voluntarily and without legal cause. In all other cases examined the deceased had been at fault in causing the applying spouse to leave the family, or the cause was unknown.

''In *Estate of Gould,* 181 Cal. 11 [183 Pac. 146], an interlocutory decree had been granted to Nettie Gould, the widow of deceased, and therefore this court must conclude that he was at fault. There Justice Lennon, delivering the opinion, said:

'' 'When a person dies leaving a widow under section 1464 of the Code of Civil Procedure, such widow is entitled to a reasonable provision for her support. . . . This provision is not conditioned upon her having lived in a family relation with her husband at the time of his death. It follows, therefore, that the right of Nettie Gould to a family allowance must be determined independently of the circumstance that she had not lived with Frank H. Gould for some years prior to his decease.'

''There is nothing in this language opposed to the doctrine contained in *Estate of Miller, supra,* there being no showing that the widow had voluntarily abandoned deceased under conditions rendering him no longer liable for her support; in fact, the fault was his because the decree was awarded to her.

''In *Estate of Parkinson,* 193 Cal. 354 [224 Pac. 453], (1924) an order of the probate court granting the widow an allowance for her support out of her deceased husband's

estate was appealed from and affirmed. Appellant claimed that the order was erroneous for the reason that the petitioner, though admittedly the widow of decedent, was not and never had been, at the time of his death, a resident of the state of California; and for the further reason that she was not at the time of the decedent's death a member of the family of decedent.

"In the above case the question as to who was at fault for the separation is much discussed and it appears that the deceased was entirely responsible for the fact that the petitioner was not living with him at the time of his death, and that therefore, being blameless, the widow had not lost her right to the allowance.

"In the *Estate of Parkinson, supra,* Justice Richards says in part:

" 'We see no reason in either the language of the statute or in the policy of the law for holding that this widow is not entitled to the allowance permitted under the terms of section 1466 of the Code of Civil Procedure merely because she was, through no fault on her part but wholly through fault on his part, separated from her husband and a nonresident of California at the time of his death. . . .

" 'This court held, in the matter of the *Estate of Gould,* 181 Cal. 11 [183 Pac. 146], that the right of a widow to a reasonable provision for her support under section 1464 of the Code of Civil Procedure was not conditioned upon her living in a family relation with the deceased at the time of his death. In so holding this court reviewed the earlier cases in this state involving this very question and wherein it was held that in the absence of a showing that the wife had either by her conduct lost, or by her agreements waived, her statutory rights as a widow, she was entitled to a family allowance upon her husband's death, even though she was not living in the family relation with him at the time of his death. We can perceive no reason why this principle should not be given a like application to the provisions of section 1466 of the Code of Civil Procedure.'

"It will be noted that in this case the widow is allowed her statutory rights only because she was not at fault in the severance of the family relation.

"In *Estate of Henningsen,* 199 Cal. 103 [247 Pac. 1082, 1083], an appeal was taken from an order setting apart a

homestead to the surviving husband. The husband had left home, after some trouble with his wife, a few months before her death. It does not appear that he was at fault for the separation—in fact, the contrary appears as the evidence was that 'she told him to leave the house' and 'To stay away from the house and never to come near it.'

"This case holds that 'the rights of the surviving spouse created under the provisions of section 1464, 1465 and 1466 of the Code of Civil Procedure were not conditioned upon the existence of the family status at the time of the decedent's death', but the court bases that holding upon the authority of *Estate of Gould* and *Estate of Parkinson, supra,* and it cannot be considered as having any greater effect than the decisions in those estates. In fact, the decision in this case and *Estate of Parkinson* were both written by Justice Richards.

"A still later case, *Estate of Boeson,* 201 Cal. 36 [255 Pac. 800], decided by Justice Seawell in 1927, cites with approval the *Estate of Miller, supra,* and reenunciates the doctrine therein laid down. In this estate the widow was denied a petition to have the whole estate assigned to her upon the ground that she had voluntarily relinquished her right by agreement. In passing upon the effect of the interlocutory decree which had been rendered, the court used this language:

" 'Before a court may legally deny her assignments by way of family allowance it must appear that she has not only ceased to constitute a member of the family of the husband by virtue of a separation or interlocutory decree of divorce, but also that she has lost the right to seek support and maintenance from him by reason of her conduct, such, for example, as her abandonment of him, or her voluntary surrender of the right of support.

" '*Estate of Miller,* 158 Cal. 420 [111 Pac. 255]; *In re Noah,* 73 Cal. 583 [2 Am. St. Rep. 829, 15 Pac. 287]; *Estate of Yoell,* 164 Cal. 540 [129 Pac. 999]; *Estate of Bose,* 158 Cal. 428 [111 Pac. 258].'

"A consideration of the cases cited in this decision reveals the fact that the first case cited, to-wit: *Estate of Miller,* is a case where the widow's right was lost 'by reason of her conduct', to-wit: Her abandonment of her husband, while the other cases cited are examples where her

right was lost by 'her voluntary surrender of her right of support'.

"In *Estate of Ehler*, 115 Cal. App. 403 [1 Pac. (2d) 546], a widow was held entitled to her statutory rights because of lack of proof that she had lost such rights by her conduct. After citing and discussing *Estate of Parkinson*, *Estate of Gould* and *Estate of Henningsen, supra*, and re-iterating the doctrine therein expounded, the court says:

" 'Appellants contend that the widow voluntarily abandoned decedent and that she thereby waived her right to claim any allowance from his estate. As a matter of fact, the record shows that she left him and instituted an action for divorce against him which was pending at the date of his death. It was, therefore, never determined whether or not respondent left voluntarily or for good cause. In view of this we are of the opinion that there was a total absence of any showing that respondent by her conduct lost her statutory rights as a widow of decedent.'

"*Estate of Hale*, 117 Cal. App. 545 [4 Pac. (2d) 263], goes no further than to hold that the widow did not lose her statutory rights because she was not living with her husband at the time of his death, having separated from him and brought a suit for separate maintenance, the reasons for the separation being unknown. The decision says 'appellant left him for reasons which do not appear', showing that the court had in mind the fact that the reasons for the separation were important.

"The court had not failed to note that in some of the later cases cited, some language is used to the effect that the maintenance of the family relation or status is not necessary to enable the widow to recover her statutory rights, but a careful study of these cases will reveal the fact that this language is not intended to apply to a case where the widow had voluntarily abandoned the deceased without legal cause and under conditions rendering him no longer liable for her support.

"The text writer in California Jurisprudence evidently takes the same view as this court:

" 'A surviving wife is not entitled to such a homestead unless she was a member of her husband's family immediately before and at the time of his death. . . . In either case the status must continue to exist at the time of the

application. 11A Cal. Jur. 613, citing *Wickersham* v. *Comerford*, 96 Cal. 433 [31 Pac. 358], and *Estate of Cameto*, Myr. Prob. 42.

" 'The mere fact that the surviving spouse was living apart at the time of his death, and was doing so by mutual consent, does not bar his or her right, unless by some agreement sufficient thereto the right to claim homestead has been released and barred, or unless perhaps she left her husband without legal cause and under conditions rendering him no longer liable for her support. 11A Cal. Jur. 614, citing *Estate of Cameto*, Myr. Prob. 42.' "

For the foregoing reasons the order is affirmed.

Plummer, J., and Thompson, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on August 5, 1936, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 31, 1936.