[Civ. No. 12099.   First Dist., Div. One.   July 10, 1942.]

Estate of JOE RUIZ, Deceased.   MARY E. RUIZ, Appellant, v. FRANCIS CUTTING, as Executor, etc., et al., Respondents.

O. C. Parkinson for Appellant.

Rutherford, Jacobs, Cavalero & Dietrich, Newton Rutherford, D. R. Jacobs, Philip Cavalero, Stephen Dietrich, Richard W. Dickenson and William H. Woodward for Respondents.

GOODELL, J. pro tem.—The appellant Mary E. Ruiz prosecutes this appeal from an order which vacated an earlier order granting her a family allowance of $150 per month. She and Joseph B. Ruiz were married on October 26, 1938, and on February 7, 1939, they separated.  She instituted a suit for separate maintenance against him for extreme cruelty and he filed therein a cross-complaint for divorce alleging extreme cruelty.  The case was tried, findings were made, and on June 21, 1940, an interlocutory judgment of divorce was awarded to the husband from which no appeal was taken.  The findings negatived the wife's allegations of cruelty and found to be true the allegations of cruelty contained in the husband's cross-complaint.

On March 17, 1941, the husband died.  On May 16, 1941, the appellant's ex parte petition for a family allowance was

granted. On June 5, 1941, the executor joined with two residuary devisees and legatees in a motion to vacate the order, which motion was granted on August 15, 1941, and this appeal was taken.

The appellant states the question involved as follows: "Does a wife who has left her husband's house against her will upon his express order to get out and stay out lose her right to a family allowance from his estate by reason of an intervening interlocutory decree of divorce in his favor upon the ground of mental cruelty, no final decree having been entered, no agreement ever made by the wife to waive right to support, and the husband having died less than a year after entry of the interlocutory decree?"

The first few words of the statement just quoted sound the keynote of the appellant's position on this appeal, namely, that the separation was against the wife's will and because of the husband's "express order to get out and stay out." Throughout her briefs the appellant stresses and reiterates the argument that the separation was caused by the decedent husband. She alleged in her complaint that the separation took place on June 19, 1939; this was denied by the husband, who pleaded that it took place on February 7, 1939, and the court found with him. Some of the acts of cruelty may have been before that date but some of them are definitely found to have taken place *after* that date, which circumstance makes no difference. 9 Cal. Jur. 661, § 33; see, also, *Stitt* v. *Stitt*, 8 Cal. (2d) 450, 452 [65 P. (2d) 1297], where it is said: "In the absence of allegations and proof, it cannot be presumed that the separation was without justification on the part of the aggrieved spouse." Moreover, it is settled law that the spouses were "by virtue of the interlocutory judgment, living separate by agreement." *London G. & A. Co.* v. *Industrial Acc. Com.*, 181 Cal. 460, 466 [184 Pac. 864], followed in *Stauter* v. *Carithers*, 185 Cal. 160 [196 Pac. 37]; 9 Cal. Jur. 758, § 109. The earlier separation, then, whenever it was, and whatever the cause, is of no legal significance.

The question, stripped of this collateral issue of separation, is whether a wife, against whom her husband has recovered an interlocutory judgment based upon her cruelty, is entitled to a family allowance upon the husband's death within the statutory year.

Section 680 of the Probate Code reads as follows: "The widow and minor children are entitled to such reasonable allowance out of the estate as shall be necessary for their

maintenance according to their circumstances, during the progress of the settlement of the estate, . . ." The appellant is, of course, the decedent's widow (*Estate of Dargie*, 162 Cal. 51 [121 Pac. 320]) and she has no property of her own, and no income; she is therefore within the letter of section 680. On that claim of an absolute statutory right to family allowance she stands, and from that premise she argues that the denial of the family allowance is sheer judicial legislation. However, it is the function of the courts to ascertain and declare legislative intent, and with respect to the intent of this particular provision (formerly § 1466, Code Civ. Proc.) the Supreme Court over fifty years ago had this to say in *In re Noah*, 73 Cal. 583, 589 [15 Pac. 287, 2 Am. St. Rep. 829] : "We also think that in enacting 1466 of the Code of Civil Procedure, the legislature had in contemplation the ordinary case where 'the parties to the marriage relation live together until death severs the tie.' *The letter of the statute may cover other cases.* We are not to be understood as saying that in every instance where the husband and wife have separated, the widow should be denied an allowance. . . ." (Emphasis ours.)

The judgment herein made no provision for the support or maintenance of the wife, and indeed it could not have done so, for it had been awarded to the husband for the wife's fault. (*In re Nielsen*, 19 Cal. App. (2d) 305 [65 P. (2d) 360].) Thus it is obvious that appellant now insists on her right to this family allowance despite the fact that for nine months preceding the husband's death he had been freed from all obligation to support her. (See, *In re Noah*, 73 Cal. 583, 588, *supra.*)

The appellant argues that separation does not destroy the right to a family allowance, or, to put it another way, the right "is not conditioned upon her having lived in a family relation with her husband at the time of his death." It was so held in *Estate of Gould*, 181 Cal. 11, where the interlocutory judgment awarded part of the community property to the wife and part to the husband "free and clear of all claim of the defendant [wife]." The husband died just a week after the interlocutory judgment, and the wife was granted a family allowance. It was claimed, that because of the separation—which had continued for many years—there was no family at the time of the death, and that the award to the husband of such remaining community property free

and clear of all claim of the wife, destroyed her right to a family allowance, but it was held otherwise. However, it must be borne in mind that in that case the judgment had been awarded to the wife for the fault of the husband. In *Estate of Parkinson,* 193 Cal. 354 [224 Pac. 453], also relied upon by appellant, a family allowance was upheld. The wife had been separated from her husband for many years. He had sued her for divorce in Michigan, but had lost. Later she obtained a decree against him for separate maintenance. He disposed of his estate by will to the exclusion of his wife. It will be observed, again, that the court had determined that the fault was the husband's. Indeed at the time of his death the decree in the separate maintenance case obligated the husband to support the wife. Another case relied upon by appellant is *Estate of Henningsen,* 199 Cal. 103 [247 Pac. 1082], where the Gould and Parkinson cases are followed. There the spouses had separated about three months before the wife's death. It was held that separation did not bar the surviving spouse—in that case, the husband—from asserting his right to a probate homestead. The question of fault was not adjudicated, for no suit had been brought for divorce. In *Estate of Ehler,* 115 Cal. App. 403 [1 P. (2d) 546], the wife was granted a family allowance. She had commenced a suit for divorce against her husband, who died while it was pending. There had been no adjudication as to fault. *Estate of Hale,* 117 Cal. App. 545 [4 P. (2d) 263], is substantially the same as the Ehler case. In both cases the husband was paying temporary support to the wife under a court order at the time of his death. No case has been cited by appellant holding that where there has been an adjudication fixing a spouse's guilt, such spouse is entitled, in spite of such adjudication, to a family allowance. On the contrary, *Estate of Fulton,* 15 Cal. App. (2d) 202 [59 P. (2d) 508], holds that where a wife voluntarily abandoned her husband under conditions rendering him no longer liable for her support, and an interlocutory decree had been granted to him on the ground of her desertion, she lost her statutory right as a widow to a probate homestead. The comprehensive review in that opinion of the authorities on this general subject renders an extended discussion of them herein wholly unnecessary. It is difficult to find any distinction between that case and this. There the husband obtained the judgment on the ground of wilful desertion; here he obtained it on the ground of extreme cruelty. In both cases the court adjudicated the fault

to be on the wife's side, and in both the court held that the marriage should be dissolved under conditions rendering the husband no longer liable for the wife's support. In the Fulton case the court says that in its opinion "the principles of law that are determinative . . . are laid down in *Estate of Miller*, 158 Cal. 420 [111 Pac. 255]. . . ." With this we agree. In the Miller case an order setting apart to the widow an estate under $1,500 in value was reversed because the court had shut out evidence designed to show that the wife had abandoned the decedent. The Miller case is quoted extensively in the Fulton case, *supra*, at pages 205-207, and from such quotation it is clear that the court deemed crucial the status of the parties at the time of the decedent's death. The purpose of such inquiry is to determine whether there existed in fact a family relationship as defined in *In re Noah, supra*, that is, whether the surviving spouse claiming post-mortem support out of the estate had been, to quote *In re Noah*, "in the receipt or in law entitled to demand of deceased a maintenance before his death."

There can be no serious question that, in determining the status of the spouses at the time of the husband's death— whether, in other words, there was then a "family" and whether the husband was then under any obligation to support the wife—recourse may be had to the judgment roll in the divorce case and that it, indeed, should be the sole source of information. Manifestly no higher, better, or more dependable evidence is obtainable. In *Estate of Fulton, supra*, in referring to the interlocutory judgment of divorce, the court said: "The judgment has become final and this court is bound thereby." (See, also, *Estate of Breitter*, 69 Cal. App. 424 [231 Pac. 351] (cited, by the way, by appellant), and *Borg* v. *Borg*, 25 Cal. App. (2d) 25 [76 P. (2d) 218], and *Overell* v. *Superior Court*, 29 Cal. App. (2d) 418 [84 P. (2d) 789].)

The notice of motion for an order vacating the earlier order granting the family allowance was based upon the ground that the first order had been made "as a result of mistake, inadvertence, misapprehension, and fraud on the part of said petitioner." In fairness to the appellant it should be said that the petition for family allowance showed on its face that the interlocutory decree had been granted to the decedent-husband against the petitioner-wife, and the record shows that the file in the divorce suit was produced before the judge

who made the order, who read the findings and judgment and discussed the matter with appellant's counsel. No fraud, therefore, is attributable to the appellant.

For the foregoing reasons the order appealed from is affirmed.

Peters, P. J., and Ward, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 2, 1942. Gibson, C. J., Shenk, J., and Edmonds, J., voted for hearing.