[Civ. No. 74. Fifth Dist. Jan. 18, 1962.]

Estate of LAWRENCE R. HELWINKEL, Deceased. HENRY JOHN HELWINKEL, Petitioner and Respondent, v. ESTHER M. HELWINKEL, Executrix, etc., Objector and Appellant.

Keough & Cali, Richard T. Tosaw and William J. Keough for Objector and Appellant.

Carter & Lacoste and Ernest Lacoste for Petitioner and Respondent.

STONE, J.—Lawrence R. Helwinkel died November 13, 1960. His widow, the appellant herein, successfully petitioned to have his will admitted to probate and to have herself

appointed executrix thereof. On January 24, 1961, appellant obtained an order awarding her a family allowance of $250 per month commencing February 1, 1961. She was subsequently indicted, tried and convicted for the murder of her husband. None of the monthly installments of family allowance were paid. Her counsel stipulated with counsel for the brother of her deceased husband that the family allowance be terminated as of April 20, 1961. Prior to that, however, on April 13, the brother's attorney had filed a petition asking the court to enjoin the executrix from paying to herself the three payments for family allowance which had accrued, and to have the order for family allowance vacated. Petitioner further prayed that the court make no further order for family allowance pending disposition of the murder charge.

In his points and authorities accompanying the motion, counsel for respondent cited certain Code of Civil Procedure sections relating to injunctions, together with Probate Code section 258 which bars a person convicted of murder or voluntary manslaughter from succeeding to any portion of the estate of the victim. Respondent made no reference to section 473 of Code of Civil Procedure, although the substance of the motion falls within the purview of that section. However, failure to cite this code section is of no consequence since the court has inherent power to grant the relief sought in this case aside from the authority conferred by Code of Civil Procedure section 473. ██ Any question as to the authority of a court upon motion to correct or vacate its own final judgment obtained by extrinsic fraud was set at rest by the Supreme Court in *Olivera* v. *Grace,* 19 Cal.2d 570 [122 P.2d 564, 140 A.L.R. 1328], wherein it was said by Mr. Chief Justice Gibson, at page 575:

"One who has been prevented by extrinsic factors from presenting his case to the court may bring an independent action in equity to secure relief from the judgment entered against him. [Citations.] Where the court that rendered the judgment possesses a general jurisdiction in law and in equity, the jurisdiction of equity may be invoked by means of a motion addressed to that court."

(See *Craney* v. *Low,* 46 Cal.2d 757, 759 [298 P.2d 860]; *Davis* v. *Davis,* 185 Cal.App.2d 788, 791 [8 Cal.Rptr. 874]; *Adoption of Emery,* 191 Cal.App.2d 428, 432 [12 Cal.Rptr. 685]; 29 Cal.Jur.2d, Judgments, § 125, p. 46.)

Appellant attacks the order vacating the original order for family allowance upon two grounds: first, that the court had

no authority to refuse to grant a family allowance even though appellant murdered her husband; and, second, that the widow cannot be denied the installments which accrued prior to the filing of the stipulation of the parties terminating the family allowance.

In asserting her first ground of appeal, appellant reasons that because the right to a family allowance is created by statute, namely, Probate Code section 680, a widow cannot be deprived of this right except by statutory authority. She calls our attention to the fact that a widow who murders her husband is denied the right to succeed to his estate by a specific statute, Probate Code section 258, which reads:

"No person convicted of the murder or voluntary manslaughter of the decedent shall be entitled to succeed to any portion of the estate; but the portion thereof to which he would otherwise be entitled to succeed goes to the other persons entitled thereto under the provisions of this chapter."

Appellant points out that there is no comparable Probate Code section relating to family allowance created by Probate Code section 680. Therefore, she argues, the court was bound by section 680 and had no authority to deny her the allowance. We do not concede to appellant's argument that a probate court must blindly grant a family allowance to a widow. The marital relationship immediately prior to death may be considered by the court as a circumstance bearing upon the right of the surviving widow to a family allowance. This principle is expressed in *Estate of Ruiz*, 53 Cal.App.2d 363 [127 P.2d 945], wherein the court said, at page 365:

"The appellant is, of course, the decedent's widow [citation] and she has no property of her own, and no income; she is therefore within the letter of section 680. On that claim of an absolute statutory right to family allowance she stands, and from that premise she argues that the denial of the family allowance is sheer judicial legislation. However, it is the function of the courts to ascertain and declare legislative intent, and with respect to the intent of this particular provision (formerly § 1466, Code Civ. Proc.) the Supreme Court over fifty years ago had this to say in *In re Noah*, 73 Cal. 583, 589 [15 P. 287, 2 Am.St.Rep. 829]: 'We also think that in enacting 1466 of the Code of Civil Procedure, the legislature had in contemplation the ordinary case where "the parties to the marriage relation live together until death severs the tie." *The letter of the statute may cover other cases.* We are not to be understood as saying that in every instance where the

husband and wife have separated, the widow should be denied an allowance. . . .' ''

Certainly a court that has the authority to deny a family allowance because of the widow's failure to maintain a home for the husband prior to his death, has the authority to deny a family allowance to a widow who has murdered her husband. Such reasoning simply serves to conform the judicial processes to common sense.

We find a parallel situation in *Abbey* v. *Lord,* 168 Cal.App. 2d 499 [336 P.2d 226], a case involving the right of a surviving joint tenant who had killed his wife, to become the sole owner of the property. Probate Code section 258 was not applicable since the husband did not succeed to the joint tenancy property by inheritance. Nor was there any other statute bearing on the right of a surviving joint tenant who had killed a fellow joint tenant. Yet the court there said, at page 508:

''In the instant case the trial court concluded that the joint tenancy in the stock was destroyed and terminated by the act of killing the decedent. . . . This court does not believe that it should countenance the addition of homicide as the approved method of terminating a joint tenancy without affecting the results found by the trial court.''

We believe, also, that appellant's position is untenable in the light of Civil Code section 3517 which provides that ''No one can take advantage of his own wrong.'' Appellant argues that section 3517 is not applicable for the reason that it is a general statute and cannot nullify the specific statute, Probate Code section 680. This contention is not convincing to us. As we see it, appellant's entitlement to a family allowance depended upon her becoming a widow, a status she achieved by murdering her husband. Civil Code section 3517 became applicable in point of time before Probate Code section 680. That is to say, appellant was a murderess under penalty of Civil Code 3517 when she petitioned the court for an award of family allowance from the estate of the man she had murdered. The fact that Civil Code section 3517 was not enacted for the specific purpose of modifying Probate Code section 680, or modifying any particular section, does not bar its application to matters within the scope of the Probate Code.

A murderess is barred from succeeding to her husband's estate by Probate Code section 258. Yet under appellant's reasoning the court would be powerless to deny the same woman a family allowance. The estate to which she could not succeed would be doled out to the murderess by the month.

It is conceivable that in this manner an entire estate could be depleted and Probate Code section 258 evaded and nullified. Certainly the Legislature intended no such incongruity in the law when it enacted Probate Code section 680. We do not find legislative intent a bar to the application of Civil Code section 3517 to cases within the provisions of Probate Code section 680.

The second point raised by appellant is that in no event did the court have authority to deprive her of the family allowance which had accrued prior to the stipulation of the parties. To deny her the accrued family allowance would, she asserts, constitute a forfeiture prohibited by Penal Code section 2604. That section provides:

''No conviction of any person for a crime works any forfeiture of any property, except in cases in which a forfeiture is expressly imposed by law; and all forfeitures to the people of the State, in the nature of a deodand, or where any person shall flee from justice, are abolished.''

A forfeiture in the sense of Penal Code section 2604 is the deprivation of a right or of a thing which the person owned or to which he was entitled at the time he committed the crime. In the case before us, appellant's crime gave rise to her claim of family allowance; without the crime she had no claim. To hold that appellant cannot profit by murder is not to invoke a forfeiture, as she had no right to the family allowance in the first instance. Good conscience and good sense impel the application of the principle embodied in section 3517 of the Civil Code, which in this case is simply that a murderess cannot profit by committing murder.

It should be noted, further, that the court did not make a final order denying the widow's right to the family allowance. The order very carefully protected her interests should the widow's conviction of the murder of her husband be reversed on appeal. The order provides, ''As Mrs. Helwinkel has an appeal now pending from her conviction, this order is made without prejudice to her right to renew her application for a family allowance if her conviction is reversed and she is subsequently found not guilty of the charge against her.''

The order vacating order for family allowance is affirmed.

Conley, P. J., concurred.

Brown, J., deeming himself disqualified, did not participate.