[Civ. No. S. C. 68. Second Appellate District, Division One.—September 30, 1938.]

In the Matter of the Estate of WINNIE K. HURLEY, etc., Deceased. JEROME C. HURLEY, Appellant, v. HARRY G. FRENCH, Respondent.

Henry G. Bodkin and Charles S. Gass for Appellant.

Conroy & Conroy, Robert Chambers and Edward L. Conroy for Respondent.

WHITE, J.—Appellant Jerome C. Hurley is the surviving husband of Winnie K. Hurley, also known as Alvina K. Hurley, who died on the ninth day of August, 1936, leaving property in the county of Los Angeles now subject to administration under a holographic will of decedent. Respondent Harry G. French, named as executor in the will, filed a petition for probate of the same. Appellant Jerome C. Hurley, surviving husband, filed a written opposition to the probate of the will, setting up as grounds for such contest that the decedent at the time she executed the will was of unsound mind and acting under the undue influence of respondent Harry G. French, and that the documents constituting the testamentary instrument were executed through force and fear and were not entirely written, dated and signed in the handwriting of the testatrix. Appellant Diederich Reckmann, the uncle of decedent, and claiming to be her sole heir at law, filed a similar ground of opposition, and in addition alleged that appellant Jerome C. Hurley had made and entered into instruments in writing, based upon a consideration, wherein and whereby he waived, relinquished, discharged and conveyed to his wife during her lifetime "all of his right, title and interest, in and to her property, and said instruments were in full force and effect and binding upon Winnie K. Hurley, the deceased, and Jerome C. Hurley, at the time of her death, and are now in full force and effect".

Contestant Jerome C. Hurley filed his answer to the opposition instituted by contestant Reckmann which, generally speaking, admitted the execution of a certain instrument

which was presented to him by his wife as a property settlement agreement to be made in contemplation of divorce, but alleged that at the time such instrument was presented to contestant Hurley by his wife, the latter stated to him that chiefly because of his religious belief he was disliked by her parents, and that if the agreement were not executed her father or mother would not devise or bequeath any of their property to her. Contestant Hurley's answer further charged that his said wife further represented to him that the only reason for the execution of said agreement was to enable her to exhibit the same to her parents, and that the agreement would be used for no other purpose and would not be a valid or binding agreement; that contestant Hurley, believing and relying upon said representations, signed the instrument, but that it was not the intention of the parties to the same at the time it was signed or at any time thereafter that the document should or would in any way whatsoever affect the rights of the parties thereto or either of them in or to the property owned by them, and that it was never intended by Hurley nor his wife, when they executed the document in question, that by the execution of the same either party thereto waived or relinquished their claim against each other or settled any questions of alimony or money demands that one party could make against the other. Contestant Hurley further alleged in his answer that he would not have signed this agreement except for his belief and reliance upon the representations allegedly made by decedent at the time of the execution of the document, and that the instrument was drawn by or at the direction of decedent and not by Hurley or at his request; that it never was the intention of the parties that the document in question should purport to affect the right of either party to inherit the estate of the other.

The instrument in question, admittedly executed by appellant Hurley and his deceased wife during her lifetime, in so far as it is pertinent herein, reads as follows:

" . . . This agreement is made in contemplation of divorce and is deemed and is in all things a property settlement between the parties, settling everything including community property.

"That the first party has real and personal property of her own, standing in her name in Oregon and California, and it is the sense of this agreement that she is to have

and retain everything that she owns in the way of property of all kinds, both real and personal, and the second party agrees, at the time of the signing of this contract, to make and execute a Deed, wherein and whereby he shall convey to the first party whatever interest he may have by way of community interest, or otherwise, in and to: . . . '' (Describing certain real property.) ''and shall make any and all other necessary conveyances, documents or instruments whatsoever to carry into effect this agreement.

''The second party shall not claim, on and after this date, any interest whatever in any real or personal property, including the California property, belonging to or standing in the name of first party, and the first party shall not claim any interest whatsoever in any real or personal property belonging to and standing in the name of the second party, and each shall take their respective properties, free and clear of all claim of the other, no matter from what source said claim or claims may arise, and this shall include all property in all States or places.

''This document shall also settle all questions of alimony and any and all money demands that one could make against the other of any kind whatsoever, and the first party waives as against the second party, any and all claims that she has or might have against the second party for failure of the second party to support the first party, and this document shall be and is a complete, final and conclusive property settlement, and settles every possible demand that one could make against the other. . . . ''

Upon the foregoing issues the cause came to trial, and during the progress thereof the court granted the motion of respondent executor to bar all testimony on behalf of appellant Jerome C. Hurley and ordered his contest dismissed, on the ground that the property settlement agreement by its terms barred any right on the part of said appellant Jerome C. Hurley to inherit any property of his wife, the decedent herein.

The trial then proceeded upon the contest instituted by appellant Reckmann, resulting in the return of a special verdict by the jury finding that the last will and testament here in question was executed by reason of undue influence exerted upon the testatrix by the proponent of the will and respondent herein, Harry G. French. Following the entry

of judgment in accordance with the motion for dismissal and the verdict, the court denied a new trial in so far as appellant Hurley was concerned, but granted a new trial as to appellant Reckmann.

From that portion of the judgment rendered in favor of appellant Diederich Reckmann and respondent Harry G. French and against appellant Jerome C. Hurley, dismissing the latter's contest to the probate of the will, he prosecutes this appeal; while from the order granting a new trial to respondent Harry G. French upon the verdict of the jury in favor of the contest instituted by appellant Reckmann, the latter appeals; but in connection with the last-named appeal no briefs have been filed, and to all intents and purposes the appeal in question has been abandoned so far as appellant Reckmann is concerned. Therefore, when hereafter reference is made to the appellant it will refer to appellant Jerome C. Hurley, the surviving spouse.

■ Appellant's first ground of appeal is that the terms of the property settlement admittedly signed by him and his wife were not such as to waive his right to inherit the property of his deceased wife as her heir at law or to bar his opposing the probate of her will. Thus the question is squarely presented whether in the case at bar the terms of the contract constituted a release of all future property rights, including inheritable interests, or whether said contract should be construed as reaching no further than to release all of the respective interests of the parties thereto in the property of the other as living spouses.

It is not disputed that husband and wife may by appropriate agreement waive their respective inheritable rights in the estate of the other. It is equally well established, however, that the courts will not construe a property settlement between husband and wife as depriving the survivor of inheritance or other rights growing out of the marital relation, except where there is a clear and unmistakable intention to barter away such rights. The agreement before us seems to be, as stated therein, "a property settlement between the parties, settling everything including community property". It also contains a mutual release of "alimony and any and all money demands that one could make against the other of any kind whatsoever". There is no release in terms by either one of claims upon the future acquisitions of the other,

nor, in terms, any release by either one upon the estate of the other in case of death.

Respondent relies upon a line of cases commencing with *In re Davis,* 106 Cal. 453 [39 Pac. 756], but in the Davis case the agreement read that the wife "does relinquish and surrender· forever all claims of any nature she may now or hereafter have against any property that said W. W. Davis may now have or may hereafter in any manner acquire"; and in that case it was held that "the wife contracted away her inheritable interest in her husband's property". In that case also there were .appropriate words indicating an intention never to assert in any way any right to the property of the husband, present or future. No such intention can be derived from the language of the contract before us on the part of either one of the parties to it. It is urged that the intention may be found in the situation of the parties at the time; that the agreement was declared to be ·made in contemplation of a divorce. It is conceded in the instant case that no divorce was obtained, and the parties to the agreement remained husband and wife until the death of the latter. In *Jones* v. *Lamont,* 118 Cal. 499, 502 [50 Pac. 766, 62 Am. St. Rep. 251], it is said: "We do not think the courts should come to the aid of these contracts so as to de· prive either the husband or wife of the property rights growing out of the marriage relation, except where there is a clear and unmistakable intention to barter away such rights."

To hold that by the terms of the agreement before us the husband waived his inheritable rights, we must read into the contract something that does not appear, either expressly or by necessary implication, from the language thereof. In 3 Pomeroy's Equity Jurisprudence, section 1290, it is stated that to effect the result urged by respondent, "there must be on the face of the instrument expressly, or collected from its provisions by necessary implication, language of present transfer applying directly to the future, as well as existing property, or else language importing a present contract or agreement between the parties to sell or assign the future property". (See, also, *Estate of Minier,* 215 Cal. 31 [8 Pac. (2d) 123, 81 A. L. R. 689].)

Holding, as we do, that the release in the case before us did not amount to a waiver or release by either of the parties thereto of the right to succeed to all or any portion of the

590

other's estate it follows that the contestant and appellant, Jerome C. Hurley, the surviving husband of the deceased, has not released or relinquished his right of inheritance in the property of his deceased wife. Having such an interest in said estate, he was entitled to maintain a contest of her will. (Sec. 370, Prob. Code.)

Respondent, however, asserts that whatever construction be placed upon the agreement, appellant is estopped from claiming any interest in the property by reason of the provisions of section 3517 of the Civil Code, which reads: "No one can take advantage of his own wrong." In support of his claim in that regard, respondent argues that when appellant admitted and in fact asserted by his offer of proof that his intention in executing the agreement was to deceive the parents of his wife—to make them believe that if the parents made a will favorable to their daughter, appellant waived all right to claim then or thereafter any part of the property so bequeathed or devised—he cannot now ask the court's assistance, after the death of his wife, to enable him to profit by his own deception and fraud.

It seems to be the established law that an equitable estoppel cannot be asserted by one who is not a party to the contract, and further, that where a contract is entered into for the sole purpose of inducing or influencing the conduct of a third party who is a stranger to the contract, the doctrine of estoppel may not be invoked. (*Coffman* v. *Malone*, 98 Neb. 819 [154 N. W. 726, L. R. A. 1917B, 258]; *Booth* v. *County of Los Angeles*, 124 Cal. App. 259 [12 Pac. (2d) 72]; *Creason* v. *Creason*, 123 Cal. App. 455 [11 Pac. (2d) 451].) An equitable estoppel can only be invoked by a party to the transaction to whom the representation was made and who acted upon such representation to his injury. It should also be noted that although, depending upon the viewpoint, the act of appellant in aiding his wife to deceive her parents might be regarded as reprehensible, nevertheless, it cannot be said as a matter of law that appellant's conduct in that regard was necessarily fraudulent. Fraud as contemplated by the law is not without limitation and the act of appellant herein referred to does not appear to be included within the definition of either actual or constructive fraud as defined by the code.

The above conclusions at which we have arrived make unnecessary a discussion or consideration of other points raised.

The order granting a new trial after judgment based on the jury's verdict against respondent Harry G. French and in favor of appellant Diederich Reckmann, is affirmed.

The amended judgment from which Jerome C. Hurley appeals is reversed and the cause remanded for a new trial.

York, P. J., and Doran, J., concurred.