[Civ. No. 6992.   Third Dist.   Mar. 13, 1944.]

ROBERT W. HUSTON, Respondent, v. ELNA BROWNING SCHOHR, Appellant.

Mento & Read, Emerson W. Read and Joseph W. Mento for Appellant.

Robert W. Huston, in pro. per., Huston, Huston & Huston and Percy Napton for Respondent.

SCHOTTKY, J. pro tem.—Plaintiff and respondent commenced an action against defendant and appellant upon a promissory note in the principal sum of $15,000, executed on December 29, 1941, in favor of the law firm of Huston, Huston & Huston, and assigned by said firm to respondent.

Appellant filed an answer setting forth that said law firm of Huston, Huston & Huston had been her attorneys for more than six years prior to the date of the execution of said promissory note; that the services rendered by them were of a value not in excess of $3,000; that respondent Robert W. Huston, acting for said firm, and while the confidential relation of attorney and client existed, shortly prior to the date of the execution of said note, promised, agreed and represented to appellant that he had obtained for her a loan for

$65,000, to be secured by a mortgage or deed of trust upon her lands; and that said respondent attorney demanded that appellant sign said note in sum of $15,000, in consideration of his securing said loan, and that she, reposing confidence and trust in said attorneys, and believing that said loan had been obtained, signed said note; that said note was signed by her to settle all past claims of said law firm, which did not exceed $3,000, and for securing said loan, which services in obtaining said loan were worth to appellant the sum of $12,-000, had said loan been obtained, but that said loan was never obtained and that there was a partial failure of consideration as to the sum of $12,000.

Appellant set forth the further defense that at the time she signed said note she relied upon the fiduciary trust relations existing between respondent and respondent's assignors and appellant, and that respondent and respondent's assignors obtained a personal advantage over appellant in that there was not sufficient consideration for said promissory note and that said promissory note was secured by undue influence.

Appellant set forth the additional defense that in the year 1941 she was badly in need of moneys to manage her properties, that said fact was known to respondent, and that respondent agreed to obtain for appellant a loan of $65,000, upon her promise to pay him reasonable compensation therefor; that on or about the date of said note, respondent reported to appellant that he had secured a definite lender who would lend her said sum of $65,000, and stated to appellant that if she would sign said note for $15,000, said law firm would consummate said loan; and that appellant, relying on said promises and reposing confidence in said attorneys, signed said promissory note; that respondent and respondent's assignors had not obtained said loan and did not obtain same, and that the signing of said note was secured by the undue influence of respondent in violation of the fiduciary and trust relations existing between them.

Upon the trial respondent testified that said promissory note had been delivered to him in Colusa by appellant in payment of the attorneys' fees of the law firm of Huston, Huston & Huston to December 29, 1941; that the amount had been agreed upon in his office in Woodland a few days prior to its execution in the presence of appellant and her

husband; that the note was given in satisfaction of the legal services of said firm to appellant; that said note had been assigned by said firm to him and that no payments had been made thereon. The note was then introduced in evidence and plaintiff and respondent rested.

Appellant then moved for a nonsuit, contending that inasmuch as the relation of attorney and client existed between respondent and appellant it was incumbent upon respondent to show in his prima facie case that no advantage was taken of appellant, that she had been fully advised as to the transaction, and that the amount in the note was a fair price. The court denied the motion for a nonsuit.

Appellant thereupon testified substantially in accordance with the allegations of her answer hereinbefore set forth, also giving in detail her version of the various items of legal and other services rendered for her by respondent and respondent's assignors. She also testified that she had first employed Arthur C. Huston, Sr., in 1935 to look after her legal business at an agreed annual retainer of $250.

N. P. Schohr, husband of appellant, was then called as a witness by appellant and testified that he was present in the lobby of the hotel at Colusa when respondent "came over with a ready made note for her to sign"; that respondent stated that he wanted the note signed so it could be included in that year's income taxes, and that he had secured the loan for the $65,000; that appellant had agreed to pay respondent the $15,000 out of the proceeds of this loan and that respondent stated if the loan was not secured he would destroy the note.

The appellant thereupon rested her case. Respondent in rebuttal testified:

"Mr. and Mrs. Schohr were in my office in Woodland and the matter of how much fees we were going to charge came up and I told them I didn't know, I hadn't discussed the matter with my father. About three or four days before the note was signed, they were in my office and I told them then I had discussed the matter with father and that in our discussion we had agreed we would charge Seventeen hundred and fifty and this fifteen thousand dollars and Mr. Schohr says, 'That is reasonable enough,' and Mrs. Schohr says, 'Fine.' I said, 'All right, we will let it go,' I said, 'The reason we want a note is so we can turn it in on this year's

income tax and not the following year.' About three or four days later I was coming to Colusa and made an appointment to meet them in the Riverside Hotel at Colusa. They signed the note and gave it to me, without attorney's fees and without interest. That was the reason the note was given.''

Respondent denied that anything was said at any time as to the payment of the $15,000 being contingent upon the securing of the loan, and stated that the amount of the note was what he and Arthur Huston, Sr., had concluded was due them for services rendered over the seven year period, and that the amount was agreed to by both appellant and her husband. Respondent also testified in much detail as to the various legal matters attended to by said law firm, and the various services rendered during a period of nearly seven years. These services included, among other things, the representing of appellant in protecting her interest as an heir of the Browning estate and as an owner of one-third interest in the Browning Company and the estate, and the settlement of various tax matters connected therewith, at the conclusion of which liquidation appellant received as her individual share, free and clear of incumbrances, property of the approximate value of three hundred thousand dollars ($300,-000).

The deposition of Arthur C. Huston, Sr., was then offered by appellant. In said deposition the said witness testified that appellant had employed his firm on June 16, 1935, to look after her legal affairs; that there was never any discussion or agreement with him as to attorneys' fees or compensation. He then detailed the various services rendered by him up to the time of his illness in April, 1941.

Plaintiff and respondent then rested, and appellant, in surrebuttal, testified that respondent had stated at the time the note was given that the said law firm would charge the sum of $15,000 to cover their past services plus the securing of a loan on the Gridley ranch of $65,000. Appellant thereupon rested and the court asked: "No more sur-rebuttal?" Counsel for appellant answered, "That is all."

After the arguments of respective counsel and the instructions of the court, the jury rendered a verdict in favor of plaintiff and respondent in the sum of $15,000, and this appeal is from the judgment entered upon said verdict, and from the order denying appellant's motion for a new trial.

Appellant makes a vigorous attack upon the judgment and urges three grounds for the reversal of the judgment and order. These are: 1. The court erred in denying appellant's motion for a nonsuit; 2. The evidence was insufficient to justify the verdict in favor of respondent; 3. The court erred in refusing certain instructions offered by appellant and in giving certain instructions to the jury. We shall discuss these contentions in the order of their statement.

As to the motion for a nonsuit, it is a well established rule that when a motion for a nonsuit is denied and the trial proceeds and a judgment is entered, the error, if any, in denying the motion for a nonsuit is cured if all of the relevant evidence introduced in the case supports the judgment. That such should be the rule requires no argument because the law and the courts are more concerned with the disposition of litigation upon its merits than upon technical rules of procedure or order of proof.

In *Peters* v. *Southern Pacific Co.*, 160 Cal. 48, 52-53 [116 P. 400], the court said:

"We shall not examine into the correctness of the ruling of the court in denying the motion for a nonsuit. After the order made, the defendant introduced evidence on its defense. It is well settled that an order denying a motion for a nonsuit will not be disturbed, although the evidence at the close of plaintiff's case was so weak that it might properly have been granted, if, upon the trial, the defect is overcome by evidence subsequently introduced. If, upon the conclusion of the whole case, there is evidence upon the material issues warranting the submission of the cause to the jury, the question of whether the court erred in denying a nonsuit becomes of no consequence. (*Lowe* v. *San Francisco Ry. Co.*, 154 Cal. 573-576 [98 P. 678], and cases therein cited.)"

In the case of *Parra* v. *Cleaver*, 110 Cal.App. 168 [294 P. 6], in which case a hearing was denied by the Supreme Court, it was said at page 170:

"The denial of a motion for a nonsuit is not prejudicial error where facts sufficient to support the judgment are in evidence either before or after the denial of the motion. (*Cosby* v. *Cline*, 186 Cal. 698 [200 P. 801].) Whether or not denial of this motion was prejudicial error must depend upon our conclusions as to whether there was sufficient evidence to sustain the judgment."

In *Long Beach Brick Co.* v. *de Dodson,* 104 Cal.App. 99 [285 P. 382], in which a hearing by the Supreme Court was likewise denied, the court said at page 104:

"The denial of the motion for a nonsuit at the close of respondent's case need not be considered because the question of whether or not the court erred in denying a nonsuit becomes of no consequence if, upon a conclusion of the whole case, there is evidence sufficient to support a judgment (*Peters* v. *Southern Pac. Co.,* 160 Cal. 48, 52, 53 [116 P. 400]; *Cosby* v. *Cline,* 186 Cal. 698, 702 [200 P. 801]; *County of Los Angeles* v. *Rindge Co.,* 53 Cal.App. 166, 175 [200 P. 27]; *Raddant* v. *Watson,* 89 Cal.App. 103, 106 [264 P. 589]). What has been said disposes of the alleged error in denying a nonsuit at the close of all the evidence."

Also see *Lowe* v. *San Francisco etc. Ry. Co.,* 154 Cal. 573, 575-576 [98 P. 678]; *Easom* v. *General Mortgage Co.,* 101 Cal.App. 186, 192 [281 P. 514]; *Coats* v. *Hathorn,* 121 Cal. App. 257, 259 [8 P.2d 1038]; *Farrell* v. *Miramar Hotel Co., Ltd.,* 125 Cal.App. 623, 631 [13 P.2d 945]; *Burrows* v. *Burrows,* 136 Cal.App. 323, 325 [28 P.2d 1072].

The issue before us then becomes one as to whether or not the evidence supports the judgment. It is a well established rule of law that before an appellate tribunal is justified in reversing a judgment upon the ground of the insufficiency of the evidence it must appear from the record that, accepting the full force of the evidence adduced, together with every inference favorable to the prevailing party which may be drawn therefrom, and excluding all evidence in conflict therewith, it still appears that the law precludes such prevailing party from recovering a judgment. Having in mind this familiar rule, which, we are constrained to state, is too often disregarded by counsel in arguing conflicting evidence before an appellate tribunal, we are convinced that the judgment in the instant case finds ample support in the record.

As hereinabefore set forth, respondent testified as to the conversations with appellant preceding the execution of the note, and that the amount of the note was what he and his father, Arthur C. Huston, Sr., considered was due them for services performed during the period of approximately seven years. Respondent in his testimony, and Arthur C. Huston, Sr., in his deposition, detailed the services rendered.

There was, of course, contradictory evidence given by appellant and her husband, but no evidence was introduced that the sum of $15,000, the amount of said note, was an unreasonable, excessive, or unjust fee for said services. The verdict of the jury in favor of respondent carries with it the implied finding that the payment of the promissory note was not contingent upon the securing of a loan for appellant by respondent, and also that the jury accepted and believed the testimony of respondent and his father and rejected any contrary testimony of appellant and her husband. Appellant had ample opportunity to produce, if she could, expert testimony of other attorneys to offset the testimony of respondent as to the value of the legal services, and the fact that she did not do so would indicate either that she could not produce such testimony or that she chose to rely upon her testimony and that of her husband as to the agreement and understanding as to the conditions upon which the note was executed and delivered. Considering the magnitude of the interests involved, and the time that apparently was expended by the law firm of Huston, Huston & Huston, we deem it proper to state that the sum of $15,000 does not appear to us to be an unreasonable charge for the services rendered.

What we have already stated disposes of the contention of appellant that the evidence is insufficient to justify the verdict.

■ Appellant requested the following instruction:

"I instruct you that if you find that at the time the document in question was executed, and secured by Messrs. Huston, Huston and Huston from the defendant, they were acting in any matter or matters as her attorneys and counselors at law, then the highest degree of fairness and good faith is required of them as attorneys in dealing with their client in securing such document, and the Courts view all transactions between attorneys and clients wherein any advantage is secured by the attorneys with suspicion, and examine them with utmost scrutiny."

The court modified said instruction by striking out: "and the Courts view all transactions between attorneys and client wherein any advantage is secured by the attorneys with suspicion, and examine them with utmost scrutiny," and appellant contends that in so doing the court committed prejudicial error.

We do not believe that either reason or authority requires that when a court instructs a jury that in all dealings between attorney and client the highest degree of fairness and good faith is required of the attorneys in dealing with their client in securing the document, it is also necessary to go further and advise the jury that the courts view such transactions with suspicion.

Among the instructions given by the trial court were the following:

"You are instructed that attorneys at law, in dealing with their clients, are required to exercise the highest order of good faith and to disclose to clients all information in their possession as to the material facts of the matters and transactions out of which the relation of attorney and client arose, which would or might influence the client in entering into or refusing to execute any contract entered into between them."

"I instruct you that if you find that at the time the document in question was executed, and secured by Messrs. Huston, Huston & Huston from the defendant, they were acting in any matter or matters as her attorneys and counselors at law then the highest degree of fairness and good faith is required of them as attorneys in dealing with their client in securing such document."

"If you find from the evidence in this case that at the time Elna Browning Schohr signed the document in evidence here dated December 29, 1941, for $15,000.00, the payee therein, Messrs. Huston, Huston and Huston, were representing her as her attorneys at law in any matters and as such then bore to said Elna Browning Schohr the relation of attorney and client in connection with the transactions then pending, then in the transaction in this case involving the signing of said document by Elna Browning Schohr, Messrs. Huston, Huston and Huston, and each of them, in securing of and execution of said document, could take no advantage of their relations to the defendant as her attorneys, and if you find that undue influence was used by the said attorneys or any of them in the securing of said document, said note is invalid and is not inforcible against the defendant, and your verdict would be for the defendant.

"Undue influence is defined as the use, by one in whom a confidence is reposed by another, of such confidence for the

purpose of obtaining an unfair advantage over that other one, and is also defined as the taking of a grossly oppressive and unfair advantage of another's necessities or distress.''

''If you find from all the evidence in this case that one of the members of the law firm of Messrs. Huston, Huston and Huston, at a time while the members of said law firm were representing or acting for the defendant as her attorneys at law, or on a retainer as her attorneys at law, advised or stated to the defendant that they had secured for the defendant a loan of moneys on her properties, and if you find that such statements or representations were not true, and if you find that such statement or representations were made by such one of said members of said law firm who then did not believe said statements or representations to be true, by reason of which statements or representations Mrs. Schohr was induced to make the promissory note in question in this case, then, I instruct you, if the said note was so obtained and secured from the defendant then your verdict in this case should be for the defendant.''

''If you find from the evidence that at the time defendant signed said document here in question, plaintiff, Robert W. Huston, was a member of the law firm of Huston, Huston and Huston, and that said law firm was then acting and representing her as attorneys at law in an effort to secure for the defendant a loan on Mrs. Schohr's real property from a lender or lenders, and if you find that said Robert W. Huston at the time said note was signed by Mrs. Schohr, to induce and persuade Mrs. Schohr to sign said promissory note, stated to and represented to Mrs. Schohr that he had secured a loan for $65,000.00 for her on her properties from a lender, with the purpose and intention that Mrs. Schohr should rely on such statement and representation, and thereby induced Mrs. Schohr to sign said promissory note relying on such statement and representation, and if you find in connection therewith that said statement or representation was not true, and that Mr. Robert W. Huston had not found or secured such loan, or lender or lenders, at that time, and if in connection therewith you find that said Robert W. Huston knew at the time the statement or representation was made, if you find it was made, that the same was not true, and that he knew he had not found or secured the loan, or did not believe he had found or secured such loan, then

plaintiff cannot recover on said promissory note and your verdict should be for the defendant.''

''You are instructed that if you find from the evidence that the law firm of Huston, Huston and Huston, performed legal services for the defendant and that at the time of the making and delivery of the note, sued upon, to said firm by said firm by said defendant, that the said defendant was indebted to the said law firm, for said legal services, in the amount of the said note then plaintiff is entitled to recover the amount due upon said note.''

From a reading of the above instructions and others given by the court it is apparent to us that the trial court fully and fairly instructed the jury upon all of the issues involved, and particularly upon the question of transactions between attorneys and client. We find no merit in the attack of appellant upon either the instructions given or the instructions refused. ■ A court is not required to give all instructions requested by the parties, but is only required to instruct the jury fully and fairly as to the law applicable to the case. ■ This, we are convinced, the trial court did in the instant case.

In view of the foregoing the judgment and order of the trial court should be and hereby are affirmed.

Adams, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied April 11, 1944, and appellant's petition for a hearing by the Supreme Court was denied May 11, 1944.