[Civ. No. 7441.   Third Dist.   Oct. 20, 1948.]

JOHN REGINALD LUIS, a Minor, etc., et al., Respondents, v. ORLO C. CAVIN et al., Appellants.

Chester O. Hansen, John Said and Ray W. Hays for Appellants.

C. Ray Robinson and Russell ·F. King for Respondents.

PEEK, J.—Frank Luis died as the result of injuries received in an automobile accident which occurred in a railroad underpass on Highway 99 immediately north of the city of Livingston. An action for damages was instituted by his wife individually, and as guardian *ad litem* of their 5-year-old son.

The complaint alleged that Luis was fatally injured as a result of the concurring negligence of the appellant Silva, who was then operating a truck in the course and scope of his employment for the appellant Lumber and Supply Company, a corporation, sometimes referred to as the Lumber Company, and appellant McKenzie who was then operating a truck in the course and scope of his employment for appellant Cavin, and the defendants Morrow and Vierra, who were operating their own vehicles. The appellants' answers admitted the agencies as alleged but denied the allegations of their negligence and pleaded contributory negligence of the decedent as a special defense.

At the conclusion of the trial a nonsuit was granted in favor of the defendant Vierra, and the jury returned a verdict in favor of defendant Morrow and a verdict in favor of the plaintiffs. Appellants' motion for judgment notwithstanding the verdict was denied and their motion for a new trial was conditionally granted unless appellants should waive all sums in excess of $25,000. Plaintiffs filed such a waiver and judgment was entered accordingly. Thereupon defendants Cavin and McKenzie filed a joint notice of appeal as did defendants Lumber & Supply Company and Silva.

The evidence, viewed as we must in the light most favorable to the judgment, may be summarized as follows:

On the evening of the accident; Silva, who admittedly was acting in the course and scope of his employment for the Lumber Company, was driving its truck from Dos Palos to

Modesto. Immediately north of the city of Livingston the highway descends to the underpass in a sweeping curve to the left, continues on the level for a short distance and ascends out of the underpass in a sweeping curve to the right. At this point a concrete curbing 12 inches high and 7 feet wide divides the highway into four 12-foot lanes—two for northbound traffic and two for southbound traffic. The Lumber Company truck was loaded with a rice harvester which extended above the maximum height permitted by law, of which provision Silva admittedly was aware. Upon attempting to drive through the underpass the top of the harvester struck the overhead structure, causing the truck to stop in the outside or right hand lane for northbound traffic.

Although Silva testified that he and his helper placed three flares—the first 100 feet to the front, the second 100 feet to the rear, and the third on the left side of the truck, his testimony was directly contradicted by a written statement given by the defendant Morrow to a highway patrolman immediately after the accident and by a passenger in the Luis car, and indirectly contradicted by the defendant Vierra. According to Silva, to avoid the inconvenience of backing the truck out of the underpass he left it there for approximately 15 or 20 minutes while he attempted to make adjustments in order that he could proceed through the underpass.

While the truck was so stopped the defendants Vierra, Morrow and McKenzie respectively entered the underpass from the south or rear of the truck and in the outer of the two northbound lanes. Vierra was approximately 100 feet from the truck when he first noticed it and to avoid a collision was compelled to slow down and turn into the inside lane. Defendant Morrow likewise did not see the truck until he was approximately 100 feet away. He too turned into the inside lane and reduced his speed. Defendant McKenzie, being unable to stop the truck he was driving, crashed into the rear of the Morrow car, and then veered to the right striking the rear of the Vierra pickup truck. The Morrow car came to rest in the northbound inside lane with its left wheels on the center curbing while the Vierra pickup and the truck driven by McKenzie came to a stop, one behind the other, in the outside northbound lane. Approximately 15 minutes thereafter the decedent Luis entered the underpass from the south, struck the Cavin truck which had not been moved from where it had come to a stop in the outside northbound

lane, and sustained fatal injuries. By that time the Lumber Company truck had been moved out of the underpass, the other vehicles remaining as indicated.

It is unnecessary to dwell at length upon the first contention made by appellant Silva and the Lumber Company which is directed at the question of the alleged violation of the maximum height provisions contained in section 699 of the Vehicle Code. Even assuming for the purposes of this discussion that the truck and its load, the harvester, were "implements of husbandry incidentally operated or moved over a highway" so as to come within the exemptions of that section, nevertheless other acts of negligence by the defendant Silva still remain. Substantial, though conflicting, evidence, which appellants have failed to consider or mention in their brief, shows that Silva did not place flares as required by section 590 of the Vehicle Code, and in addition the undisputed evidence is that he left the truck in the underpass for 15 to 20 minutes while he endeavored to find a way to reduce the height of his load, which was of itself sufficient to sustain the implied finding of the jury that Silva was negligent. As stated by the court in that portion of the opinion so frequently quoted from *Crawford* v. *Southern Pacific Co.*, 3 Cal. 2d 427 [45 P.2d 183]:

"It is an elementary, but often overlooked principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court."

The next contention of these appellants is that whether or not they were negligent in operating a truck with a load of excess height, in failing to place flares or in failing to remove their truck promptly from the highway, such acts were not proximate causes of the accident. Their contention is that the negligence of appellant McKenzie, driver of the Cavin butane truck, in failing to remove his truck promptly from the underpass was such an intervening cause as to break the chain of causation. They further contend that the chain of causation was also broken by the act of the defendant Vierra in failing to give a hand signal that he was slowing down, by the excess speed of the defendant McKenzie in the

operation of the truck driven by him, thereby preventing him from stopping as quickly as he should, and by the decedent Luis in driving his car at an excessive speed.

Plaintiffs were not required to prove that the alleged negligence of the defendant Silva was the sole proximate cause of the fatal injury. (*Herron* v. *Smith Bros.*, 116 Cal.App. 518 [2 P.2d 1012].) All that was necessary was a showing by substantial evidence that either one or all of such acts were negligent, and obviously as they were, then his acts were a primary and proximate cause of the events which followed.

██ Also it may be said that by permitting his truck to remain in the underpass he was guilty of a continuing negligence and he may not excuse himself, as he has attempted to do, by reliance upon the presumption that others will exercise due care in the operation of the vehicles under their control. (*Inai* v. *Ede*, 42 Cal.App.2d 521 [109 P.2d 400].)

██ Gauging his conduct in the light of all of the surrounding circumstances, his admitted knowledge of the highway curving as it did in entering and leaving the underpass, the truck carrying a harvester, the top of which was 17 feet high, and over the prescribed height limit, the failure to place flares and the failure to move the truck, we cannot say as a matter of law that the jury was not justified in finding as it did. Silva as a reasonably prudent man may be held to have foreseen that as a part of the risk of such negligent conduct other vehicles might collide in attempting to pass his truck so parked on the highway. Therefore it cannot be said that the failure of defendant McKenzie to remove his truck was such an intervening act that it relieved defendant Silva of the consequences of his own negligence. (*Mosley* v. *Arden Farms Co.*, 26 Cal.2d 213 [157 P.2d 372, 158 A.L.R. 872].) Nor was the alleged negligence of Vierra and Morrow an intervening act relieving Silva of the consequences of his own negligence, since as stated in the case last cited "what occurred was reasonably foreseeable, and should have been anticipated." (26 Cal.2d 218.) As to the alleged contributory negligence of the decedent constituting an intervening act it is sufficient to state that the verdict implies that the jury, upon proper instructions, did not find as a matter of fact that the decedent was so negligent.

██ Appellants next contend that the trial court erred in admitting over objection evidence of a compromise settlement by appellants with their codefendant Morrow, thereby introducing the question of insurance into the case. Contrary to

the statement made by counsel for appellants in their briefs, it appears from the record that Morrow was not called as plaintiffs' own witness but was called as an adverse party and cross-examined under the provisions of section 2055 of the Code of Civil Procedure. During the course of such examination Morrow was asked whether or not the property damage to his car was paid for by the defendant Cavin. Over the objection of counsel for said defendant Cavin, the witness testified that "Some insurance company paid off the damage on the car and hospital bill and doctor bill and all expenses it cost me." The question, according to the record, was asked solely for the purpose of disclosing possible bias and prejudice of the witness and the court restricted it to that issue.

It is true generally, as appellants contend, that evidence of a compromise settlement by a defendant with a codefendant for damages arising out of the same tort is incompetent and improper as an admission against interest. But it is also true that evidence of such a compromise agreement is competent and proper cross-examination of the codefendant receiving the settlement to show bias or prejudice when confined to such purpose. (*Bluemel* v. *Kroizy*, 114 Cal.App. 205 [299 P. 756] ; *People* v. *Ellena*, 67 Cal.App. 683, 691 [228 P. 389].) Therefore the trial court properly admitted the evidence so attacked by appellants.

■ These appellants further contend that the trial court committed prejudicial error in suggesting there was a possibility the defendants were covered by insurance. The record shows that a prospective juror on his voir dire examination addressed the trial judge as follows: "I don't think it is customary for either the defense or the plaintiff to allow insurance agents to sit upon a panel of this type due to the nature of our business, and if that is true why it might possibly be that I could be dismissed." To which the judge replied: "I suspect that there is a possibility that you may be, but I am not in a position to do that." The essence of appellants' contention is that the effect of the foregoing exchange was to suggest to the jury the possibility that the defendants were covered by insurance. The reply of the trial judge to the juror was assigned as prejudicial misconduct but appellants did not request a formal instruction that the question of insurance was not to be considered nor did they request that the jury be admonished to disregard such remark. Inasmuch as plaintiffs' counsel properly could have asked the prospective juror whether or not he was an insurance

agent (*Gladstone* v. *Fortier*, 22 Cal.App.2d 1 [70 P.2d 255])
there would appear to be no basis for objection to the same
information voluntarily given by the prospective juror.

Appellants Silva and Lumber Company next contend
that the trial court committed error in refusing certain in-
structions offered by them in regard to the questions of
proximate cause and the burden of proof on the issues
of negligence and proximate cause.

An examination of all of the instructions given by the
trial court reveals that the jury was fully and fairly instructed
on all of the issues presented including the matters covered
by appellants' requested instructions.

The well-settled rule is that it is not error for a court to
refuse a requested instruction if the subject matter thereof
is substantially incorporated in the instructions given. A
party is not entitled to have the jury instructed in any
particular phraseology, and may not complain on the ground
that his requested instructions are refused if the court, of its
own motion or otherwise, correctly announces the substance
of the law applicable to the case. (*Huston* v. *Schohr*, 63 Cal.
App.2d 267, 277 [146 P.2d 730].)

Furthermore it is elementary that appellants had the
burden of affirmatively showing wherein they sustained prej-
udice by the failure of the court to give the specific instruc-
tions requested by them and that in the absence of such show-
ing this court cannot reverse the judgment. (Const., art. VI,
§ 4½.)

The last attack upon the judgment, and one in which all
appellants join, is that because of the provisions of a property
settlement agreement previously entered into between the
plaintiff wife and the decedent which was incorporated in an
interlocutory decree of divorce, the plaintiff lacked the ca-
pacity to bring this action and that even if plaintiff had the
capacity to sue she did not, as a matter of law, sustain any
legally compensable loss and consequently the following in-
structions given by the court at the request of the plaintiffs
were improper:

"If, under the Court's instructions, you find that the
plaintiffs, John Reginald Luis and his mother, Angelina E.
Luis, are entitled to a verdict against any defendant or
defendants for the death of Frank George Luis, you will award
them such sum as, under all the circumstances of the case,
may be just compensation for the pecuniary loss they have
suffered by reason of the death of Frank George Luis.

"In determining that loss, you may consider the financial support, if any, that plaintiffs were reasonably certain to have received from the earnings and services of Frank George Luis. You may consider also what pecuniary loss, if any, plaintiffs have suffered, and will suffer in the future with reasonable certainty, by being deprived of the comfort, society and protection of the deceased Frank George Luis.

"In weighing these matters, you may consider the age of the deceased Frank George Luis and of the plaintiffs, the state of health and physical condition of deceased and of plaintiffs as it existed at the time of the death and immediately prior thereto, their station in life, their respective expectancies of life as shown by the evidence, and all other facts in evidence that throw light upon the question of pecuniary loss.

"With respect to the matter of life expectancy, you must keep this point in mind: the prospective period of time that will be of concern to you if you decide for the plaintiffs is only the shorter of the two life expectancies, that of the said plaintiff or that of the deceased Frank George Luis, because manifestly one could derive pecuniary benefit from the life of the other only for the period that both would have lived.

"If you find that plaintiffs are entitled to a verdict, you may consider as evidence in arriving at the amount of damages, if any, that the expectancy of a man 27 years old is 37.43 and that the life expectancy of a woman 25 years old is 38.81 years.

"However, life expectancy shown by the mortality tables is merely an estimate of the probable average remaining length of life of all persons in our country of a given age, and that estimate is based on not a complete but only a limited record of experience. Therefore the inference that may be drawn from the tables applies only to one who has the average health and exposure to danger of people of that age. Thus, in connection with this evidence, you should consider all other evidence bearing on the same issue, such as that pertaining to the occupation, health, habits and activity of the person whose life expectancy is in question. . . ."

"I instruct you that a divorce does not become final until twelve months after the interlocutory decree of divorce has been granted and that a reconciliation within such twelve months will nullify and invalidate such divorce proceedings.

I further instruct you that the right of John Reginald Luis to support by his father is not affected by an interlocutory decree or a final decree of divorce granted to either parent."

Inasmuch as the record reveals that the third instruction attacked by appellants was not given as stated in their briefs, but to the contrary was "REFUSED" by the trial court, such refusal would appear to negative the need for further comment by this court.

The particular provisions of the property settlement agreement which appellants rely upon in support of this contention are those wherein the plaintiff wife waived her right to inherit from the decedent's estate either by will or under the laws of intestate succession, and her right to support, alimony, and maintenance. However, the agreement further provided that the decedent would pay to the plaintiff wife $25 per month for the support of the child, and in addition, upon demand by her, would pay for all necessary clothing and medical care for their child.

In support of their contention appellants first argue that by reason of said waivers the plaintiff wife was not an heir and hence she lacked capacity to sue under the provisions of section 377 of the Code of Civil Procedure, which section authorizes the maintenance of such an action by the "heirs or personal representatives" of the deceased. Although by said waivers she precluded her right to inherit from the estate of her husband it is the well established rule that until the entry of a final decree of divorce she remained the wife of the decedent and therefore at the time of his death her status was still that of an heir. As an heir the plaintiff wife not only had the capacity to sue and was therefore a proper party plaintiff but was in fact a necessary party plaintiff since all of the heirs are required to join when the action is brought by the heirs and not by the personal representatives of the decedent on behalf of the heirs. (*Estate of Riccomi,* 185 Cal. 458 [197 P. 97, 14 A.L.R. 509]; *Salmon* v. *Rathjens,* 152 Cal. 290 [92 P. 733]; *Bowen* v. *Kizirian,* 105 Cal.App. 286 [287 P. 570].)

Appellants further contend that even if the plaintiff wife had the capacity to sue, she did not, as a matter of law, suffer any compensable detriment for which damages can be awarded and therefore the foregoing instructions were improper. In support of this contention appellants again refer to the waiver provisions of the property settlement agreement. With such contention we cannot agree. The cases interpreting Code of Civil Procedure, section 377, have established the rule that the damages recoverable by the heirs are limited to the pecuniary loss sustained by them as a result

of the decedent's death. Such loss may consist of either the loss of a present legally enforceable right or the deprivation of possible future benefits. (*Bowen* v. *Kizirian, supra*; *Rickards* v. *Noonan*, 40 Cal.App.2d 266 [104 P.2d 839].)

The right to support and alimony are present rights and a waiver' which is limited by its terms to such rights cannot, in the absence of any showing to the contrary, be extended to deprive a person of possible future benefits which are a proper element of pecuniary loss. In this respect the present case is analogous to *Rickards* v. *Noonan, supra,* wherein the widow recovered damages despite the fact that an interlocutory decree of divorce had been entered which made no provision for her support or alimony. The legal effect of such an omission can be no different than where as here the wife had entered into an agreement in which she waived such rights. (*London Guar. & Acc. Co., Ltd.* v. *Industrial Acc. Com.*, 181 Cal. 460 [184 P. 864].) Nor did the waiver of her right to inherit affect her right to damages for whatever pecuniary loss she might have suffered by reason of the unlawful death of her husband for the further reason that since the damages, when recovered, do not become a part of the decedent's estate and are not distributed to the heirs from the estate. (*Redfield* v. *Oakland C. & S. Ry. Co.*, 110 Cal. 277 [42 P. 822, 1063].)

Since the plaintiff wife was not barred, as a matter of law, from proving the pecuniary loss, if any, sustained by her, the only issue remaining is whether or not there was any evidence justifying an award of damages to her, for if there was it was properly considered by the jury under appropriate instructions.

As mentioned, the property settlement agreement provided for monthly payments of $25 to the plaintiff wife by the decedent husband who, in addition, agreed to furnish necessary clothing and medical care for the child upon demand by the plaintiff. By reason of the death of the father the plaintiff wife now has the responsibility and financial burden of supporting their infant child (Civ. Code, § 196) and in discharging this duty she no longer will receive the foregoing aid from the decedent. Viewed realistically, such deprivation constitutes substantial pecuniary loss.

In addition, the record shows that after the entry of the interlocutory decree the decedent had sought reconcilation with his wife; that they had discussed the matter at least two or three times a week since their separation and that

she eventually intended to grant such a reconciliation but that it had not been actually effected prior to his death. The wrongful death of the husband has deprived the plaintiff wife of a possible future reconciliation with the attendant benefits of his comfort and society. But appellants contend that because of the entry of the interlocutory decree and the fact that the plaintiff wife and decedent were living separate and apart at the time of his death she did not thereby sustain any loss of his comfort and society. In so contending appellants ignore the fundamental policy of the law in relation to the interlocutory decree (*Rickards* v. *Noonan, supra*), namely, that of postponing as long as possible the final disruption of the marriage and thereby affording an interval wherein the spouses have an opportunity to effect a reconcilation and maintain their marriage relationship which the law always favored. (*Olson* v. *Superior Court*, 175 Cal. 250 [165 P. 706, 1 A.L.R. 1589].) In view of this policy we cannot hold that plaintiff wife did not, as a matter of law, sustain pecuniary loss as a result of the deprivation of the possible comfort and society of the deceased as a consequence of the entry of the interlocutory decree.

The judgment is affirmed.

Adams, P. J., concurred.

THOMPSON, J.—I dissent.

The majority opinion affirms a joint judgment of $25,000 rendered in favor of the surviving wife, individually, and the guardian *ad litem* of an infant child, in a suit for damages for the wrongful death of her husband as the result of an automobile casualty. The jury was erroneously instructed to consider elements of damages to be awarded to the wife, individually, which she had specifically waived by the terms of a property settlement agreement which was in full force. It is impossible to determine what portion of the point judgment represents the unauthorized award to the wife.

The evidence is undisputed that the spouses were living separate and apart at the time of the accident. A complete settlement of property rights was previously executed in writing and remained in full force. The only reservation which it contained was the husband's agreement to pay his wife $25 per month *for the care of the child,* and to furnish it with necessary clothing and medical aid. An interlocutory decree of divorce was rendered two months before the acci-

dent occurred. The decree included the entire property settlement agreement and directed its enforcement. No reconciliation was effected. With the exception previously mentioned, the wife had waived all property rights on account of her husband's death. The evidence does not support the judgment in that regard. For a more complete statement of the facts and issues I refer to our original opinion filed in this case (*Luis* v. *Cavin,* 84 A.C.A. 787, 191 P.2d 527), from which a rehearing was granted.

In view of the binding force of the property settlement agreement, I am convinced the jury was erroneously instructed, in effect, that, in awarding damages to the wife, as distinguished from the damages to which the child was entitled, it should take into consideration her loss of "financial *support* . . . from the *earnings and services* of Frank George Luis," and the "pecuniary loss" she would sustain "and will suffer in the future . . . by being deprived of the *comfort, society and protection* of the deceased." The jury was also told it should consider her expectancy of life of 38.81 years according to the mortality tables, since she was then "a woman 25 years old," and that, since "a divorce does not become final until 12 months after the interlocutory decree has been granted . . . a reconcilation" within that period of time "will nullify and invalidate such divorce proceedings." The clear inference to be drawn from the last mentioned instruction is that since a reconciliation might have been consummated if the husband had not been killed in the automobile accident, the jury could disregard the waiver of property rights by the wife in the settlement agreement on the assumption that it thereby became ineffectual and void. That construction of the contract is in direct conflict with the law as it should be applied to the undisputed facts of this case. The spouses had not become reconciled. They had not resumed marital obligations and relations. The only evidence regarding reconciliation was that the spouses had discussed a possible reconcilation in the future and that the wife said it was her intention "to *eventually* grant that reconciliation." A reconciliation became impossible on account of the husband's death. It follows that the property settlement agreement remained in full force, and that the jury was erroneously instructed in that regard.

I do not question the right of the wife to maintain the action in her own behalf and as guardian *ad litem* of the minor, under section 377 of the Code of Civil Procedure.

But it was nevertheless necessary for her to prove she had suffered personal detriment on account of her husband's death for which she had a legal right to recover compensation. (Civ. Code, § 3281.) The jury should have been instructed that her right to recover damages in her personal behalf was limited to the stipulated $25 per month and for all necessary clothing and medical care for the benefit of the minor child.

The written property settlement agreement was a contract which the spouses were authorized by statute to make. (Civ. Code, §§ 158, 159; *In re Davis,* 106 Cal. 453, 455 [39 P. 756].) That agreement could be canceled, altered or extinguished only by written consent of the parties, or by an executed oral agreement. (Civ. Code, §§ 1698, 1700.) An oral agreement for reconcilation of spouses who are living separate and apart will have the effect of annulling and rescinding a former written property settlement agreement only when the oral consent thereto has been fully executed *by an actual resumption of marital relations and legal obligations.* (*In re Davis, supra; London Guar. & Acc. Co., Ltd.* v. *Industrial Acc. Com.,* 181 Cal. 460, 465 [184 P. 864]; *Estate of Hurley,* 28 Cal.App.2d 584, 589 [83 P.2d 61]; *Peters* v. *Peters,* 16 Cal.App.2d 383, 386 [60 P.2d 313]; *Jones* v. *Lamont,* 118 Cal. 499 [50 P. 766, 62 Am.St.Rep. 251]; *Estate of Boeson,* 201 Cal. 36, 42 [255 P. 800]; *Brown* v. *Brown,* 170 Cal. 1, 7 [147 P. 1168]; *Estate of Martin,* 166 Cal. 399, 402 [137 P. 2]; *Lazar* v. *Superior Court,* 16 Cal.2d 617 [107 P.2d 249]; *Mundt* v. *Connecticut General Life Ins. Co.,* 35 Cal.App.2d 416, 418 [95 P.2d 966]; *Estate of Ruiz,* 53 Cal.App.2d 363 [127 P.2d 945]; *Rickards* v. *Noonan,* 40 Cal.App.2d 266, 271 [104 P.2d 839]; note, 35 A.L.R. 1529.)

The property settlement agreement having been approved, adopted and directed to be enforced by the terms of the interlocutory decree, and the agreement never having been modified or rescinded by reconciliation or otherwise, it remained in full force and conclusively determined the property rights and obligations of the spouses. (*London Guar. & Acc. Co.* v. *Industrial Acc. Com., supra.*)

The case of *Rickards* v. *Noonan, supra,* cited in the majority opinion, and relied upon by the respondents in support of the judgment, is clearly distinguishable from the facts of this case. In that action there was no property settlement agreement, as there was in the present case. The spouses had lived separate and apart prior to the death of the husband which occurred as the result of an automobile accident. There was

satisfactory evidence of a complete reconciliation. The wife's testimony was that "There was a reconciliation between us." It appeared that he associated with his wife, paid her money and a portion of her debts, and that they engaged in sexual relations. The court specifically found that she was his wife "at the time of his death." It is true that they had not "yet moved together" into their own home. But the delay in so doing was explained by evidence that he was living with his father who was partially dependent upon him, and to whom he was paying $12.50 per week; that the husband "had many bills to pay and he 'wanted to get on his feet first' so that their resumed married life would not again fail." Upon that evidence the court determined that a reconciliation of the spouses was actually consummated. No such evidence of reconciliation was adduced in the present suit. Mrs. Luis did not even testify that she and her husband had been reconciled. All that she said was that he had proposed a reconciliation, and that it was her intention to "*eventually* grant that reconciliation."

In the London Guarantee & Accident Co. case, *supra,* an order of the Industrial Accident Commission, awarding the surviving wife compensation on account of the husband's death, was reversed on appeal. The spouses had been separated and an interlocutory decree of divorce was rendered in favor of the wife, but no order for alimony or maintenance was provided for. There was no property settlement agreement between the spouses in that case. The question of a reconciliation was not involved. The Supreme Court said:

"An interlocutory judgment of divorce is, therefore, so far as it determines the rights of the parties, a contract between them. It is temporary and provisional in its nature, it is true, but it settles the rights of the parties for the time being and until some action, proceeding, or motion is begun to change the status and some order is made thereon which has that effect, *or until they become reconciled and resume marital relations,* in which event their mutual obligations are, for the time being at least, restored." (Italics added.)

The court held in that case that, because there was no reconcilation of the spouses, and the interlocutory decree of divorce had settled all rights and obligations of the spouses the surviving widow was not entitled to compensation on account of his death.

In *Estate of Dargie,* 162 Cal. 51 [121 P. 320], an order for family allowance to the widow of the decedent was affirmed

on appeal. The wife had obtained an interlocutory decree of divorce, but the final decree had not been rendered. It was held that she was still his wife at the time of his death, and that she was therefore entitled to family allowance. But in that case there was a complete consummation of their reconciliation. The court said in that regard: "The parties afterward became reconciled *and lived together as husband and wife.*" (Italics added.) There was no property settlement agreement in that case. Those facts distinguish that case from the present one.

Other cases cited and relied upon by respondents may be likewise distinguished.

While it is true that the property settlement agreement provided for payment to the wife of $25 per month "for the care of the said minor" together with "necessary clothing and medical care to the said minor child," I assume that necessary maintenance of the child was a detriment compensated by the jury in its award to the child, pursuant to the instructions which were given to the jury. If the widow was also individually allowed an award for the same purpose, it would be duplicate compensation for the same element, and therefore unwarranted and illegal.

For the reasons that it is impossible to determine what portion of the joint judgment was awarded to the wife individually, and that the instructions with relation to the wife's damages and the effect of the property settlement agreement are erroneous, misleading and prejudicial, I am convinced the judgment should be reversed.

Appellants' petition for a hearing by the Supreme Court was denied December 16, 1948. Schauer, J., voted for a hearing.