Filed 2/5/14  Comerica Bank v. Jewish Educational Movement CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| COMERICA BANK, | B248315 |
| Plaintiff, | (Los Angeles County Super. Ct. No. BC452033) |
| v. | |
| JEWISH EDUCATIONAL MOVEMENT, | |
| Defendant and Appellant; | |
| NETAN ELI HEBREW ACADEMY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Charles F. Palmer and Elizabeth Allen White, Judges.  Affirmed.

Hillel Chodos for Defendant and Appellant.

Law Offices of Kenneth W. Ralidis and Kenneth W. Ralidis; The Ehrlich Law Firm and Jeffrey Isaac Ehrlich for Defendant and Respondent.

This dispute concerns a $500,000 cash donation awarded by Kohl's Department Store (Kohl's) to respondent Netan Eli Hebrew Academy (Netan Eli) in a charitable giveaway contest benefitting schools. Appellant Jewish Educational Movement (JEM) claims entitlement to $450,000 of the donated funds pursuant to an agreement with Netan Eli to share the prize money in exchange for JEM's assistance in the contest. Netan Eli filed a motion in limine to exclude all evidence of the agreement with JEM on the ground that the agreement was illegal or immoral and that its enforcement was contrary to public policy. After the trial court granted the motion in limine, the parties stipulated to entry of judgment. JEM appeals from the judgment and the trial court's determination that the agreement with Netan Eli was unenforceable. We affirm the judgment.

## BACKGROUND

In July 2010, Kohl's initiated a $10 million charitable donation program to schools in the United States. Eligible schools were invited to submit proposals to receive a $500,000 grant. Those proposals would be displayed on the contest's webpage, where members of the public could vote for the grant requests they considered most worthy. The 20 schools whose proposals received the most votes would be declared the winners.

Kohl's contest requirements specified that the contest was open to public and nonprofit charter and private schools, grades K through 12. The contest rules stated that the winning schools would "receive funding needed to complete only the projects they have outlined in their project summary and budget overview paperwork" and that the funds would "be awarded via a one time donation made to each individual winning school." The contest rules further stated that "[f]unding use is subject to audit and review" and that the "[d]onation is not transferable or assignable."

JEM is a charitable organization that provides classes and sports facilities for children in Beverly Hills at the former Beverly Hills YMCA. JEM did not operate a school that met the Kohl's contest eligibility criteria, but it wanted to obtain the Kohl's donation to fund its operations. In order to do so, Rabbi Hertzel Illulian of JEM approached Kamran Neydavood of Netan Eli, because Netan Eli had a school that met the Kohl's eligibility criteria. Illulian told Neydavood about a sizable monetary donation

2

from an undisclosed source and asked whether Netan Eli would be willing to help JEM obtain the donation.

Approximately 10 days after Netan Eli agreed to help JEM obtain the Kohl's donation, JEM disclosed that the source of the donation was a contest sponsored by "a company like Macy's" or "like Sears." JEM did not mention Kohl's, nor did it disclose any details about the Kohl's contest or that use of the donated funds would be subject to audit and review.

The agreement between JEM and Netan Eli was memorialized in an email exchange between Neydavood and Yoseph Illulian dated August 6 and August 9, 2010. In the exchange, Illulian asked Neydavood to "confirm that we are doing the Kohl's program together with you" and to "just send me back what I wrote." Neydavood sent back a response stating that Netan Eli had hired "Yossi Illulian to represent Netan Eli Hebrew Academy for the Kohl's Cares campaign for a chance to win $500,000." Netan Eli agreed to pay JEM $450,000 "as a commission based salary" if Netan Eli won the $500,000. The email further stated that the agreement was "confidential."

In October 2010, Netan Eli received notice that its school had won a $500,000 donation from Kohl's for its funding proposal -- a building on its new campus. The notice informed Netan Eli that a $500,000 check would be delivered via UPS at the end of October.

After receiving notice that it had won the contest, Netan Eli refused to honor the agreement with JEM. JEM learned that the $500,000 check would be transmitted via UPS to Netan Eli and sent a representative to intercept the UPS delivery person and collect the envelope. JEM then filed a certificate of doing business under a fictitious name as Netan Eli, endorsed the check, and deposited it in Comerica Bank. When JEM attempted to withdraw $455,000 (the $450,000 to which it claimed it was entitled, plus an additional $5,000 "for expenses"), Comerica Bank froze the account.

## Procedural History

Comerica Bank filed this interpleader action on December 27, 2010, disclaiming any interest in the funds and seeking an order allowing it to deposit the $500,000 with the

court and requiring JEM and Netan Eli to litigate their respective claims. Comerica Bank was subsequently dismissed from the action, and JEM and Netan Eli are the only remaining parties.

Netan Eli filed a motion in limine to exclude all evidence and testimony related to its agreement with JEM, on the grounds that the agreement was illegal and therefore unenforceable under Civil Code section 1667. The trial court granted the motion, and the parties stipulated to entry of judgment for Netan Eli, subject to JEM's right to seek appellate review. This appeal followed.

## DISCUSSION

### I. General principles and standard of review

The sole issue as framed by JEM in this appeal is whether its agreement with Netan Eli is unenforceable. Whether a contract is unlawful and therefore unenforceable is a question of law that we review de novo. (*Timney v. Lin* (2003) 106 Cal.App.4th 1121, 1126.)

California law requires that a contract have "[a] lawful object." (Civ. Code, § 1550, subd. (3).) A contract with an unlawful object is void. (Civ. Code, § 1598.) Civil Code section 1667 defines "unlawful" as "1. Contrary to an express provision of law; [¶] 2. Contrary to the policy of express law, though not expressly prohibited; or, [¶] 3. Otherwise contrary to good morals."

"""No principle of law is better settled than that a party to an illegal contract cannot come into a court of law and ask to have his illegal objects carried out.""" (*Wong v. Tenneco, Inc.* (1985) 39 Cal.3d 126, 135, quoting *Lee On v. Long* (1951) 37 Cal.2d 499, 502.) The general rule against enforcing unlawful contracts is based on the rationale that the public importance of discouraging illegal transactions outweighs any equitable considerations of possible injustice between the contracting parties. (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 436; *Yoo v. Jho* (2007) 147 Cal.App.4th 1249, 1255.)

4

## II.  The contract is unenforceable

The agreement JEM seeks to enforce had as its purpose the violation of rules and requirements established by Kohl's for its charitable donation contest and to induce Kohl's to make a donation based on false representations.  Kohl's contest requirements state that only operating public and not for profit private and charter schools were eligible to receive donations.  JEM knew that it did not operate a school meeting Kohl's eligibility criteria, and it entered into the agreement with Netan Eli in order to circumvent this requirement.

The contest rules limit use of the donated funds to certain categories of projects and require contestants to submit an essay explaining "what your school would do with the money."  Although the proposal submitted by JEM and Netan Eli to Kohl's represented that the $500,000 grant would be used to construct a building on Netan Eli's new campus, the agreement required Netan Eli to transfer $450,000 of the grant funds to JEM to use for JEM's own purposes.

The contest rules state that "[f]unds will be awarded to individual schools" and that the "[d]onation is not transferable or assignable."  The agreement between JEM and Netan Eli contravenes this rule by requiring Netan Eli to transfer $450,000 of the $500,000 donation to JEM.

The parties' agreement violates both the letter and the spirit of the Kohl's charitable giveaway program, the stated purpose of which was to benefit the winning schools.  The agreement was intended to induce Kohl's to make a charitable donation to Netan Eli based on false representations and then to divert the donated funds to an ineligible assignee.  These circumstances bring the instant case "within the general principle that an *agreement to defraud third persons* is illegal and void."  (*American Trust Co. v. California Western States Life Ins. Co.* (1940) 15 Cal.2d 42, 66.)

JEM argues that the agreement with Netan Eli was not a fraud on Kohl's because "JEM is not seeking to enforce any contract against Kohl's, and Kohl's is not resisting any claim of JEM's."  That Kohl's has not sought to intervene in this action or to recover

5

the donation made to Netan Eli does not negate the fraudulent purpose of the parties' agreement. Enforcement of the agreement would effectuate that fraud.

The cases on which JEM relies to support its position, *Maryland Casualty Co. v. Fidelity & Casualty Co.* (1925) 71 Cal.App. 492 (*Maryland Casualty*) and *In re Estate of Hurley* (1938) 28 Cal.App.2d 584 (*Hurley*), are either distinguishable or inapposite. *Maryland Casualty* involved an agreement by a hospital's malpractice insurer to reimburse a workers' compensation insurer for medical bills attributable to negligence during treatment on the condition that the incident not be disclosed to the patient. (*Maryland Casualty*, at pp. 493-495.) The court held that the agreement was enforceable because it was not illegal. Neither insured had a legal duty to divulge the information to the patient, who had received payment for all required medical care. (*Id.* at pp. 496-498.) The parties in the instant case, in contrast, owed a duty to Kohl's to abide by the contest rules, which state: "By participating, individuals and schools agree to these Official Rules which are final and binding." *Maryland Casualty* is distinguishable.

*Hurley* was a probate case in which the decedent's parents had refused to bequeath anything to their daughter unless her husband signed an "agreement made in contemplation of divorce" disclaiming any interest in her property. After the husband executed the agreement, the wife inherited her parents' estate and then predeceased her husband. The executor of the wife's will argued that the husband was estopped from asserting any interest in the wife's property because he had executed the agreement for the purpose of deceiving his wife's parents. The court held that the agreement did not constitute a waiver by the husband of his inheritable rights and that the executor, who was not a party to the contract, could not invoke the doctrine of equitable estoppel. (*Hurley, supra*, 28 Cal.App.2d at pp. 590-591.) *Hurley* is thus inapposite.

The decision in *Morrison v. Willhoit* (1944) 62 Cal.App.2d 830 (*Morrison*) is a proper analogy to the instant case. In *Morrison*, the plaintiff unsuccessfully sought to recover on two promissory notes she had executed for the purpose of defrauding creditors. As is the case here, the parties in *Morrison* were aware of the unlawful nature of the transaction. The court in *Morrison* refused to enforce the notes given their

6

fraudulent purpose and the plaintiff's role in instigating the fraud: "[Plaintiff] was not only *in pari delecto*; she herself conceived the purpose of moral obliquity and invited [defendants] to her home where she confided her fraudulent design to them and prevailed upon them to enter into a contract violative of good morals. . . . The notes in suit had their genesis in no place and arose out of no event other than the transfer of plaintiff's properties . . . for the purpose of defrauding a creditor." (*Id.* at pp. 837-838.)

Here, JEM seeks to have us enforce an agreement to defraud Kohl's because it was double-crossed by Netan Eli. To do so would be contrary to the general rule that contracts will not be enforced if found to be contrary to public policy. "[T]he courts generally will not enforce an illegal bargain or lend their assistance to a party who seeks compensation for an illegal act. The reason for this refusal is not that the courts are unaware of possible injustice between the parties, and that the defendant may be left in possession of some benefit he should in good conscience turn over to the plaintiff, but that this consideration is outweighed by the importance of deterring illegal conduct. Knowing that they will receive no help from the courts and must trust completely to each other's good faith, the parties are less likely to enter an illegal arrangement in the first place. [Citations.]" (*Lewis & Queen v. N. M. Ball Sons* (1957) 48 Cal.2d 141, 150-151.)

## DISPOSITION

The judgment is affirmed. The parties are to bear their respective costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
                                              CHAVEZ

We concur:


_____, Acting P. J.          _____, J.*
ASHMANN-GERST                                  FERNS


_____
* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

7